*In re* KOSTIN ESTATE

Docket Nos. 272767and 274914. Submitted January 15, 2008, at Detroit. Decided February 14, 2008, at 9:05 a.m. Leave to appeal sought.

Juanita E. Kostin died in August 2004. Her daughter, Camille A. Kent, filed in the Oakland County Probate Court a will allegedly executed by the decedent on November 18 of an unknown year, supposedly between 1994 and 1997, that named Kent as the principal devisee. Oleta D. Williams, a niece of the decedent, objected and filed a will executed by the decedent in 1989 that named Williams as the principal devisee. Williams also claimed ownership of several bank accounts that the decedent changed in September 2002 from being titled in the decedent's name only to titled in the name of the decedent in trust for Kent (Totten trust accounts). Williams claimed the accounts as the beneficiary of a 1997 revocable trust in which the decedent named herself as trustee and Williams as the successor trustee upon the decedent's death. The decedent had executed a general assignment of all her assets, then owned or thereafter acquired, to the trust. The trust document also stated that "the trustee's decision will be conclusive on all parties (whether alive or not) who, at that time or in the future, may have any interest in trust property." The court, David Kerwin, J., initially granted summary disposition to Kent and denied Williams leave to amend her petition, but, later, reversed itself and granted sua sponte Williams leave to amend her petition. The court ruled that two bank accounts held solely in the decedent's name at the time of her death passed to Williams under the 1997 trust. With regard to the remaining bank accounts, the court awarded Williams the accounts for which the court determined that the decedent had intended to go to Williams and awarded to Kent the accounts for which it determined that the decedent had intended to go to Kent. Kent appealed the judgment and order that interpreted the will and the trust and determined heirs and devisees and title to property. Kent also appealed the court's first amended judgment and order determining title to property and granting a general judgment against Kent. The appeals were consolidated.

The Court of Appeals *held*:

1. The probate court did not err in reversing sua sponte its order of summary disposition and in granting Williams leave to amend her pleadings. The court did not abuse its discretion in determining that a new circumstance, the dismissal of a circuit court action relating to the "in trust for" accounts, warranted such action.

2. The probate court did not err in determining that the two bank accounts that were titled in the decedent's name only at the time of her death passed to Williams through the 1997 trust. The decedent did not revoke the trust with regard to those accounts when she changed the accounts from being in her name in trust for Kent to being in her name only.

3. The probate court erred in awarding to Williams the accounts that were titled in the decedent's name in trust for Kent at the time of the decedent's death. MCL 487.702 provides that if a deposit is made by a depositor, in trust for another person, and the trustee dies, the deposited money shall be paid to the person for whom the deposit was made. The statute does not require a different result when the property at issue was already in an express trust. The creation of the "in trust for" Kent accounts was a revocation of the 1997 trust with regard to the property in the "in trust for" Kent accounts. To the extent that there is a conflict in this case between MCL 555.11, regarding the creation of express trusts, and MCL 487.702, regarding "in trust for" Totten trusts, MCL 487.702, the more specific statute, controls.

Affirmed in part, reversed in part, and remanded for further proceedings.

*Hafeli Staran Hallahan Christ & Dudek, P.C.* (by *Mark W. Hafeli*), for Oleta D. Williams.

*Law Offices of Gary Rossi PLLC* (by *Chrisdon F. Rossi*) for Camille A. Kent.

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM. In Docket No. 272767, respondent Camille A. Kent appeals as of right the probate court's judgment and order following a bench trial, interpreting a will and trust, determining heirs and devisees, and determining title to property after decedent Juanita Kostin's death in 2004. In Docket No. 274914, respondent Kent appeals as of right the probate court's first amended judgment and

order determining title to property. The amended judgment and order also granted a general judgment against Kent in the amount of $331,564.87. We affirm in part, reverse in part, and remand.

I

Petitioner Oleta D. Williams is the niece of the decedent. Kent is the decedent's daughter.

The decedent was born in 1920. Kent was born in 1945. The decedent's husband died in 1976. In the years since her husband's death, the decedent had numerous bank accounts. The decedent often titled such accounts in her name, in trust for (ITF) another person or entity. On several occasions, the decedent changed the name in which her bank accounts were titled.

In 1989, the decedent made a will naming Williams as the principal devisee. This will left $1 to Kent. On November 18 of an unknown year (supposedly between 1994 and 1997), the decedent executed another purported will. The will does not state the year. This document named Kent as the principal devisee.

In 1997, the decedent created a written, revocable trust. The decedent named herself as trustee, and named Williams as successor trustee upon the decedent's death. The decedent also executed a general assignment of all her assets, then owned or thereafter acquired, to the trust. This trust made Williams the beneficiary. In addition, the 1997 trust states: "In the exercise of any power which involves Trustee discretion, the Trustee's decision will be conclusive on all parties (whether alive or not) who, at that time or in the future, may have any interest in trust property."[1]

---

[1] Later, after Kostin's death, Williams interpreted the trust to include certain bank accounts. The probate court ruled, as a matter of law, that this interpretation was reasonable.

In September 2002, the decedent changed several of her bank accounts to make them titled in her name ITF Kent. In August 2004, the decedent died. Kent filed the November 18 document as the operative will. Williams objected, filed the 1989 will as the controlling will, and argued that she succeeded to ownership of the bank accounts as beneficiary of the 1997 trust. The probate court initially granted summary disposition to Kent and denied Williams leave to amend her petition, but the probate court later reversed itself, and granted sua sponte Williams leave to amend her petition. Later, the probate court held that the two bank accounts held solely in the decedent's name at the time of her death passed to Williams under the 1997 trust. Thus, before trial, ownership of the two probate assets (the Standard Federal Bank account containing about $49,000, and the Oakland Catholic Credit Union account), was already decided.[2] Regarding the remaining bank accounts, after a bench trial, the probate court held that the decedent intended some of the bank accounts to go to Williams, and others to go to Kent, and awarded the accounts accordingly.

II

A

Kent's first argument on appeal is that the probate court committed legal error in reversing sua sponte its summary disposition order and in granting Williams leave to amend her pleadings. We disagree.

---

[2] Williams argues that the July 31, 2006, order, determining ownership of the two assets titled in the decedent's name only at the time of death, is a final order from which Kent failed to appeal, and that, therefore, this Court lacks jurisdiction over the probate court's determination of the ownership of those two assets. This argument lacks merit. A final order is an order that disposes of all claims against all parties. MCR 7.202(6)(a)(i).

Decisions on motions for summary disposition are reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). This Court reviews a trial court's decision to permit a party to amend its pleadings for an abuse of discretion. *Franchino v Franchino,* 263 Mich App 172, 189; 687 NW2d 620 (2004). The determination that a trial court abused its discretion involves far more than a difference in judicial opinion. *Gilbert v DaimlerChrysler Corp,* 470 Mich 749, 761-762; 685 NW2d 391 (2004). Rather, an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes. *Saffian v Simmons,* 477 Mich 8, 12; 727 NW2d 132 (2007).

Kent cites no authority that the probate court, after granting summary disposition regarding the alleged probate assets (the Standard Federal Bank account ending in the numbers 9375, valued at approximately $49,000 at death, and the Oakland Catholic Credit Union account ending in the numbers 0700, valued at $750 to $1,000 at death) that were titled in the decedent's name alone at the time of death, could not, on its own motion, revisit the issue of the ownership of those assets. Kent relies on *ABB Paint Finishing, Inc v Nat'l Union Fire Ins Co,* 223 Mich App 559, 564; 567 NW2d 456 (1997), for the proposition that when a case is dismissed with prejudice, a party challenging the dismissal has only two options: to move for leave to amend the pleadings, or to appeal. This is true enough. But Williams did move to amend her pleadings, and leave was granted by the probate court. Therefore, Kent lacks authority to support her claim that the probate court erred in revisiting its summary disposition decision.

The probate court did not abuse its discretion in allowing Williams leave to amend her pleadings. "Leave

[to amend] shall be freely given when justice so requires." MCR 2.118(A)(2). An amendment is generally a matter of right rather than of grace. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 659; 213 NW2d 134 (1973). Leave to amend should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility. *Id.* at 656, 659.

In its order granting leave to amend, the probate court stated: *"Should Petitioner decide to pursue issues on the 'in trust for' accounts within the above captioned case based on the Circuit Court dismissal, the visiting judge . . . will make any further decisions on appropriately filed amended pleadings and address resulting issues as presented."* (Emphasis added.) Thus, the probate court reversed its prior order and granted leave to amend apparently because there had been a dismissal of a circuit court action relating to the ITF accounts (a new circumstance). The probate court's reason for granting leave to amend is sound. Given a circuit court dismissal of claims relating to the ITF accounts, Williams correctly was given an opportunity to file pleadings relating to such accounts in the probate court case. Accordingly, the probate court's reversal of its earlier ruling is within the range of reasonable and principled outcomes, and we conclude that the probate court did not abuse its discretion in granting Williams leave to amend her pleadings.

### B

Kent next argues that the probate court committed legal error in finding that the alleged probate assets (the Standard Federal Bank account and the Oakland Catholic Credit Union account, which were titled in the decedent's name only at the time of death) passed to Williams through the 1997 trust. We disagree.

In reviewing summary disposition rulings, this Court reviews for clear error the trial court's factual findings, and reviews de novo its conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor. *In re Nowels Estate*, 128 Mich App 174, 177; 339 NW2d 861 (1983); *In re Kurtz Estate*, 113 Mich App 769, 772; 318 NW2d 590 (1982). The intent of the settlor is to be carried out as nearly as possible. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). This intent is gauged from the trust document itself, unless there is ambiguity. *Id.* If ambiguity exists, the court must look outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction. *In re Butterfield Estate*, 405 Mich 702, 711; 275 NW2d 262 (1979). The powers and duties of the trustees, and the settlor's intent regarding the purpose of the trust's creation and its operation, are determined by examining the trust instrument. *In re Butterfield Estate*, 418 Mich 241, 259; 341 NW2d 453 (1983). This Court must attempt to construe the instrument so that each word has meaning. *Detroit Bank & Trust Co v Grout*, 95 Mich App 253, 268; 289 NW2d 898 (1980).

Kent appeals only the probate court's ruling regarding the Standard Federal Bank account ending in 0211, challenging the probate court's order regarding the priority of the trust and the will, and the corresponding findings of fact and conclusions of law. Kent notes that the 1997 revocable trust provided that "[t]he sale or other disposition of the whole or any part of a Trust

asset shall constitute as to such whole or part a revocation of this trust." Kent argues that the trust was revoked with regard to all assets except the credit union account. For the reasons discussed below, with respect to Standard Federal Bank account ending in 0211, this argument lacks merit.

The decedent never revoked the written trust as it relates to the Standard Federal Bank account in question, because she did not conduct a "sale or other disposition" of that asset. First, there is no evidence that the decedent sold this Standard Federal Bank account. The issue is whether the decedent made some "other disposition" of it.

Because the 1997 trust agreement does not define "other disposition," we look to a dictionary definition. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007) ("Dictionary definitions may be used to ascertain the plain and ordinary meaning of terms undefined in an agreement."). The relevant definitions of "disposition," a noun, are "final settlement of a matter" and "bestowal, as by gift or sale." *Random House Webster's College Dictionary* (2001), p 382. Assuming arguendo that the decedent changed the title of the Standard Federal Bank account in question from being in her name ITF Kent, to her name only, such a change clearly constitutes neither a final settlement of the ownership of the account (since such a change could be made yet again), nor a gift or sale. Therefore, by changing the title to this account, the decedent did not conduct a "sale or other disposition" of it, and the 1997 trust was therefore not revoked with regard to this asset. Accordingly, the probate court did not commit legal error in concluding that upon the decedent's death, Williams succeeded to the ownership of Standard Federal Bank account in question, through the 1997

trust, i.e., that the Standard Federal Bank account was a nonprobate asset.[3]

C

Next, Kent argues that the probate court clearly erred in awarding Williams the Totten[4] trust accounts, i.e., the accounts titled in the decedent's name ITF Kent at the time of death. We agree.

This issue concerns the five bank accounts that the probate court awarded to Williams: (1) Comerica Bank account ending in the numbers 3058, valued at over $72,000 at time of death; (2) Bank One CD account ending in the numbers 1510, valued at over $111,000 at time of death; (3) Bank One checking account ending in the numbers 4935, valued at over $11,000 at time of death; (4) Charter Bank account ending in the numbers 6969, valued at over $82,000 at time of death; and (5) Charter Bank account ending in the numbers 5810, valued at over $54,000 at time of death.

The probate court found that its award of these accounts to Williams was consistent with the decedent's intent. We find that, by statute, the trial court was obliged to honor the Totten trusts.

Michigan law honors Totten trusts. MCL 487.702 provides, in relevant part:

(1) If a deposit of money shall be made in a bank or trust company by a person in trust for another, and no other or

---

[3] Because this Standard Federal Bank account was never removed from the trust, Kent's next argument, that it was not put back into the trust after being removed, is moot. *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992).

[4] *In re Totten*, 179 NY 112; 71 NE 748 (1904). A Totten trust is sometimes known as a tentative trust, *Andrew D Taylor Trust by Taylor v Security Trust Fed S & L Ass'n, Inc*, 844 F2d 337, 343 (CA 6, 1988), citing, Restatement Trusts, 2d, § 58 (1959), because it is revocable.

further notice of the existence and terms of a legal and valid trust shall have been given in writing to the bank, if the trustee dies, or if there is more than 1 trustee, all of the trustees have died, the deposited money, together with the dividends or interest on the money, shall be paid to the person for whom the deposit was made.

Michigan law also provides:

Express trusts may be created for any or either of the following purposes:

\* \* \*

*Fifth. For the beneficial interest of any person or persons where such trust is fully expressed and clearly defined upon the face of the instrument creating it subject to the limitations as to time prescribed in this title.* [MCL 555.11 (emphasis added).]

The statutes at issue do not specifically address the circumstances presented in the instant case: whether property first settled in an express trust that authorizes the trustee to interpret the trust and determine which parties may have an interest in property of the trust, but later placed in a Totten trust, passes pursuant to the express trust or the Totten trust. We also could not find any caselaw directly addressing this question. Thus, this appears to be an issue of first impression in Michigan.

"Well established principles guide this Court's statutory construction efforts. We begin our analysis by consulting the specific [statutory] language at issue." *Provider Creditors Comm v United American Health Care Corp,* 275 Mich App 90, 95; 738 NW2d 770 (2007) (internal quotation marks omitted), quoting *Kloian v Domino's Pizza, LLC,* 273 Mich App 449, 458; 733 NW2d 766 (2006), quoting *Bloomfield Charter Twp v Oakland Co Clerk,* 253 Mich App 1, 10; 654 NW2d 610

(2002). "This Court gives effect to the Legislature's intent as expressed in the statute's terms, giving the words of the statute their plain and ordinary meaning." *McManamon v Redford Charter Twp*, 273 Mich App 131, 135; 730 NW2d 757 (2006), citing *Willett v Waterford Charter Twp*, 271 Mich App 38, 48; 718 NW2d 386 (2006). "When the language poses no ambiguity, this Court need not look beyond the statute or construe the statute, but need only enforce the statute as written." *McManamon, supra* at 136. "This Court does not interpret a statute in a way that renders any statutory language surplusage . . . ." *Id.*, citing *Pohutski v City of Allen Park*, 465 Mich 675, 684; 641 NW2d 219 (2002).

The language of MCL 487.702 is plain, and has no regard for whether the property at issue was already in an express trust. If a deposit is made by a depositor, in trust for another person, and the trustee dies or the trustees die, the deposited money "shall be paid to the person for whom the deposit was made," i.e., to the beneficiary of the Totten trust. MCL 487.702. "Shall" is mandatory. *Roberts v Farmers Ins Exch*, 275 Mich App 58, 68; 737 NW2d 332 (2007). Thus, under the plain language of MCL 487.702, Kent's contention that the probate court was required to honor the decedent's Totten trusts, and to disregard the conveyance of these accounts to the 1997 trust, appears to be well supported.

To the extent that there is a conflict between MCL 555.11 and MCL 487.702, and to the extent that they are *in pari materia*, the more specific statute, the latter, controls. *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007), citing *People v Buehler*, 477 Mich 18, 26; 727 NW2d 127 (2007). Statutes are *in pari materia* when they "relate to the same subject matter and share a common purpose." *Donkers, supra* at 370. These

statutes are *in pari materia*, because they share the same subject matter (trusts), and they share a common purpose, viz., to validate and require enforcement of certain trusts. Accordingly, MCL 487.702, concerning Totten trusts, controls. Thereunder,[5] it must be held, Kent succeeded, by operation of law, to the accounts that were, at the time of the decedent's death, titled ITF Kent (i.e., the accounts that were Totten trusts at the time of death). The trial court erred as a matter of law in failing to so hold.

In addition, the creation of the Totten trusts was a revocation of the 1997 trust, as far as it relates to the Totten trust properties. The 1997 trust required, for a revocation, a "sale or other disposition" of the property in question. Creation of Totten trusts was clearly not a sale. The question is whether it qualified under "other disposition." Because the 1997 trust agreement does not define "other disposition," we look to a dictionary definition. *Coates, supra* at 504. "Disposition" is defined as a "final settlement of a matter" and a "bestowal, as by gift or sale." *Random House Webster's College Dictionary* (2001), p 382. Applying these definitions to the facts at issue, we conclude that the creation of the Totten trusts was a "disposition" of the accounts in question, because it was, under MCL 487.702, "a bestowal, as by gift" of the accounts to the Totten trust beneficiary, Kent. Therefore, under the express language of MCL 487.702, and further because the creation of the Totten trusts constituted a revocation of the 1997

---

[5] We note that in enacting MCL 487.702, the Legislature did not expressly state its intention that the creation of a Totten trust would override the intent stated in a previously created trust. Nevertheless, we are bound by the clear and unambiguous language of MCL 487.702 to reach the result we reach, and leave it to the Legislature to take additional action if indeed it possessed a contrary intent.

trust with regard to the accounts in question, the trial court erred in failing to award these accounts to Kent.

D

Next, Kent argues that the probate court's conclusions regarding the November 18 purported will are clearly erroneous. Because we have found that Kent is the successor to the ITF accounts (the Totten trust accounts), this issue is moot. *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992).

E

Finally, Kent argues that the trial court erred in compelling her to transfer to Williams her automobile, the EPFX machine, and $19,000, before Williams had commenced collection proceedings. Because we have determined that Kent is the successor to the ITF accounts, this issue, too, is moot. *Id.*

III

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.