# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MENHENNICK FAMILY TRUST.

---

TIMOTHY J. MENHENNICK,

      Appellant,

v

PAUL MENHENNICK, DENNIS
MENHENNICK, and PATRICK MENHENNICK,

      Appellees.

UNPUBLISHED
June 19, 2018

No. 336689
Marquette Probate Court
LC No. 14-032797-TV

---

Before: MURRAY, C.J., and HOEKSTRA and GADOLA, JJ.

PER CURIAM.

In this contest regarding the proper interpretation of a trust document, appellant appeals as of right the Marquette Probate Court's order denying his petition seeking enforcement of an option to purchase stock as conferred by the trust. We reverse and remand for further proceedings.

The facts of this case are not in dispute. Appellant is one of four surviving sons of Alva J. Menhennick, Jr. ("Alva").[1] Appellant's three brothers, Paul Menhennick, Dennis Menhennick, and Patrick Menhennick, are appellees. On October 18, 1989, Alva executed and funded a revocable living trust (the "trust"), under which he served as both trustee and beneficiary during his lifetime. Upon Alva's death, provided that his wife Ilean Menhennick ("Ilean") survived him, the trust assets would be divided into two separate trusts: the Ilean M. Menhennick Trust (the "marital trust") and the Menhennick Family Trust (the "family trust"). In accordance with Section III of the trust, the marital trust assets were to be used for the support and maintenance of Ilean during her lifetime and, upon her death, would be distributed to those persons appointed in Ilean's will. Section IV of the trust provided that the family trust would serve as a credit shelter trust, with Ilean as the income beneficiary during her lifetime and the residue to be distributed

---

[1] A fifth son, Alva J. Menhennick III, is deceased and left no surviving spouse or descendants.

-1-

among Alva's children upon Ilean's death. Additionally, Section IV(F) contained the following provision, which is the subject of the present appeal:

F. If at the time of distributing Grantor's trust assets, one or more of Grantor's children are actively involved in the affairs of the Harvey Oil Company, the Trustee shall, in distributing the trust residue, distribute stock in the Company to said child or children as a part of his one-fifth share. As of the date of execution of this agreement, Grantor considers Alva J. Menhennick III and Dennis J. Menhennick as actively involved in the affairs of the Harvey Oil Company. The stock shall be valued for purposes of distribution at the value as finally determined in settling the estate and trust of Grantor and as finally determined for federal estate tax purposes if it is necessary to file said return in Grantor's estate.

In addition, the Trustee shall give Grantor's child or children who are actively involved in the Harvey Oil Company the right to acquire the additional shares of stock not distributed to them as a part of the trust residue at the value per share as finally determined in the settling of Grantor's estate, it being the intent of Grantor that the children actively involved in the Company be given the option to acquire all of the stock in the Company held in the trust, with the proceeds from the sale of the stock and other non-corporate assets being distributed as a part of the residue to Grantor's other children who are not involved in the business. The right to acquire the shares in Harvey Oil Company shall expire six months from the date of the approval of Grantor's 706 return by the Internal Revenue Service.

Alva passed away in 1993 and was survived by Ilean. Because his gross estate fell within the $600,000 tax exemption applicable at the time of Alva's death, there was no federal estate tax liability, and a Form 706 return was never filed with the Internal Revenue Service. As a result, the marital trust was left unfunded, and all the assets were transferred to the family trust. These assets included 65 shares of Harvey Oil Company stock, which were then valued at $1,778.38 per share.

Ilean passed away on December 20, 2014. It is undisputed that appellant was the only son actively involved in the business affairs of Harvey Oil Company at that time. On June 12, 2015, appellant sought to exercise the option to purchase shares of stock in Harvey Oil Company pursuant to Section IV(F) of the trust and, on July 23, 2015, he filed a petition in Marquette Probate Court seeking enforcement of the option. The probate court issued an order on January 6, 2017, denying the petition. In the order, the probate court concluded that the trust document limited the time frame during which the stock option could be exercised and that appellant's right to exercise the option had expired.

This Court's review of the decision of a probate court is on the record and not de novo. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). A probate court's factual findings are reviewed for clear error, and its dispositional rulings are reviewed for an abuse of discretion. *Id*. A court "abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748

NW2d 265 (2008). However, the proper interpretation of a trust document is reviewed de novo. *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013).

"The rules of construction applicable to wills also apply to the interpretation of trust documents." *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005). This Court described the governing principles of trust interpretation in *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008):

> In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor. The intent of the settlor is to be carried out as nearly as possible. This intent is gauged from the trust document itself, unless there is ambiguity. If ambiguity exists, the court must look outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction. The powers and duties of the trustees, and the settlor's intent regarding the purpose of the trust's creation and its operation, are determined by examining the trust instrument. This Court must attempt to construe the instrument so that each word has meaning. [(Citations omitted).]

In carrying out the drafter's intent, courts "must read the [trust] as a whole and harmonize all the provisions, if possible, to that intent." *In re Bem Estate*, 247 Mich App 427, 434; 637 NW2d 506 (2001) (quotation marks and citations omitted).

On appeal, appellant contends that the probate court erred in interpreting the trust and in concluding that his right to exercise the option to purchase stock had expired. According to appellant's interpretation of the trust, the option became available only after Ilean's death, when distribution of the family trust residue was to occur.[2] In contrast, relying on the provision that "[t]he right to acquire the shares in Harvey Oil Company shall expire six months from the date of the approval of Grantor's 706 return," appellees maintain that the option was to extinguish shortly after Alva's death in 1993. Under appellees' interpretation, the proceeds from any stock purchase were to supply an income for Ilean during her lifetime and to be distributed to Alva's children upon her death. We agree with appellant's interpretation.

As a whole, Section IV(F) concerns the distribution of stock in Harvey Oil Company to those of Alva's children who, "*at the time of distributing Grantor's trust assets*[,] . . . are actively involved in the affairs of the Harvey Oil Company." (Emphasis added). The first paragraph provides that those children shall receive their share of the family trust residue in the form of company stock. The second paragraph permits them "the right to acquire the additional shares of stock *not distributed to them as a part of the trust residue*." (Emphasis added). In accordance with the plain terms of the trust, the option is not exercisable until distributions are made. First, the option applies only to those shares "not distributed . . . as a part of the trust residue." Thus, it would be impossible to determine the number of outstanding shares available for purchase before

---

[2] Due to ongoing litigation involving the trust, none of the family trust assets have been distributed since Ilean's death in December 2014.

distribution.  Second, it would be impossible to determine which of Alva's children would be eligible to exercise the option until the time of distribution.  By its plain terms, Section IV(F) extends the option only to those children actively involved in Harvey Oil Company's affairs at the time of distribution.  In accordance with Section IV(C) of the trust, termination of the family trust and distribution of its assets was to occur upon Ilean's death.

This interpretation is consistent with Alva's stated intent "that the children actively involved in the Company be afforded the option to acquire all of the stock in the Company held in the trust."  Had the value of the residual share distributed to a son involved in the business been less than the value of the aggregate amount of stock, Alva presumably intended to provide that son a mechanism by which to acquire the remaining shares.  Described in more concrete terms, Alva's gross estate was calculated to be worth $341,583.00.  This value included 65 shares of Harvey Oil Company stock, worth $1,778.38 per share, for a total of $115,594.70 in stock.  However, a one-fourth share of the gross estate would be equivalent to $85,395.75, which is less than the value of the total amount of stock.  Accordingly, the trust incorporates the purchase option to permit a son involved in the business to purchase the remaining $30,198.95 in stock not distributed to him as part of his share of the residue.[3]

This interpretation is not inconsistent with the ultimate sentence in Section IV(F), which states, "The right to acquire the shares in Harvey Oil Company shall expire six months from the date of the approval of Grantor's 706 return by the Internal Revenue Service."  As noted above, it was unnecessary to file Form 706 at the time of Alva's death.  The probate court nonetheless found the sentence unambiguous and dispositive, holding that the words "shall expire" clearly evidenced an intent that the option would be available only for a limited time.  Further, the probate court concluded that "[a]ll possible calculations of that time period" had expired, as Form 706 would have been filed and approved shortly after Alva's death in 1993.

We disagree with the probate court's reasoning.  The trust provides that the expiration of the right to exercise the option is measured from the date of the approval of Form 706.  Therefore, the language of the trust, taken at face value, dictates that the option has not expired because Form 706 was never filed or approved.  Further, Section IV(F) of the trust expressly contemplates the possibility that a Form 706 return may not be filed.  The final sentence of the first paragraph in Section IV(F) states that the value of the stock shall be "as finally determined for federal estate tax purposes *if it is necessary to file said return*."  (Emphasis added).  Accordingly, it is reasonable to assume that the drafter was aware of the possibility that the right to exercise the option may not expire, as the filing and approval of Form 706 might become unnecessary.  Further, to conclude that the right to exercise the option had expired would be to

---

[3] Appellees' position that the proceeds derived from an exercise of the option would benefit Ilean during her lifetime and would be distributed to Alva's children upon her death is lacking in merit.  The trust states that "the proceeds from the sale of the stock and other non-corporate assets [are to be] distributed as a part of the residue to Grantor's other children who are not involved in the business."  This provision is silent with respect to applying the proceeds to benefit Ilean, further indicating that the right to exercise the option would arise upon her death.

render the option a nullity. As determined above, distribution of the trust assets is a necessary prerequisite to exercise the option. However, because distribution of the family trust residue was not to occur until after Ilean's death, it would be impossible to exercise the option at the time of Alva's death. In the interest of giving meaning to each word of the trust, see *Kostin Estate*, 278 Mich App at 53, we conclude that appellant's right to exercise the option has not expired.

Appellees briefly offer three additional arguments in support of their interpretation. First, appellees contend that Alva intended his children to acquire control of the company shortly after his death. This assertion is unsupported and is contrary to the express language of the trust. Second, they argue that Alva intended his sons "to acquire the shares at a generally favorable price which did not cause a capital gain recognition to his trust." Regardless of the time the option was exercised, the trust states that the price would be fixed at the value determined at the time Alva's estate was settled, and there is nothing in the trust indicating a concern with capital gains. Finally, appellees maintain that if a son "were unable to find the money to acquire the stock within six (6) months after the federal estate tax return was finally approved, he would still be distributed shares at the time of final distribution from the trust." However, there is no language in the trust indicating a concern with respect to a son's financial ability to purchase the shares of stock. Accordingly, we conclude that the probate court erred in its interpretation of the trust and abused its discretion by denying appellant's petition seeking enforcement of the option on the basis of this interpretation.

Reversed and remanded for further proceedings. We do not retain jurisdiction.


/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Michael F. Gadola