*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KEVIN AND LAVONNE VANDINE TRUST.

---

LAVONNE VANDINE, TRUSTEE of the KEVIN AND LAVONNE VANDINE TRUST,

Appellee,

v

MONICA VANDINE and MISTY JO WELLS,

Appellants.

UNPUBLISHED
June 18, 2019

No. 344336
Kent Probate Court
LC No. 17-202038-TV

---

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Petitioners-appellants, Monica VanDine and Misty Jo Wells, appeal as of right from the probate court's order granting summary disposition under MCR 2.116(C)(8) in favor of respondent-appellee, Trustee Lavonne VanDine, and dismissing petitioners' action seeking the removal of Lavonne VanDine as trustee and the immediate distribution, after an accounting, of the assets of The Kevin and Lavonne VanDine Trust. We vacate the probate court's order granting summary disposition and remand to the probate court for proceedings consistent with this opinion.

## I. BACKGROUND

This case commenced when petitioners filed an objection to fiduciary accounting, a petition to remove the trustee, and a request for surcharge of fiduciary. Petitioners, who are Kevin VanDine's daughters and trust beneficiaries of the VanDine Family Trust, alleged that Lavonne VanDine breached the terms of the trust agreement by (1) improperly transferring real property out of the VanDine Family Trust and into a separate trust, and (2) failing to provide petitioners with required annual accountings and other information related to trust administration. Petitioners further alleged that, upon their father's death on March 11, 2012, the

-1-

trust agreement expressly and unambiguously required that all trust property "be held, administered, and distributed" to the beneficiaries named in the trust agreement.

Kevin and Lavonne VanDine entered into the trust agreement on February 8, 2010. The initial trust principal consisted of certain real estate located at 4130 52nd Street, Grandville, Michigan (the Property). Petitioners alleged that, on January 28, 2016, Lavonne VanDine, while acting as trustee, improperly conveyed the Property via quitclaim deed out of the VanDine Family Trust and into the Lavonne VanDine Revocable Living Trust, a new, separate trust that Lavonne VanDine created. In May 2017, more than five years after their father's death, petitioners alleged that they received an unsolicited letter from Lavonne VanDine's attorney announcing a trust distribution and enclosing a release for their signature. At this point, petitioners sought counsel, who, in turn, responded to the May 2017 letter demanding a full accounting or settlement based upon the actual value of the Property. Lavonne VanDine declined to provide a detailed accounting but later, in August 2017, sent petitioners a signed Final Account of Fiduciary reflecting expenses, losses, and disbursements in the amount of $191,449.91, a loan from Lavonne VanDine to the trust in the same amount, and a present value of trust assets of $7,950.08. Although the Final Account of Fiduciary did not state any proposed distribution, Lavonne VanDine also provided each petitioner with a distribution check, which petitioners refused to accept because of their objection to the trust accounting.

In Count I of their petition, petitioners claimed that Lavonne VanDine engaged in self-dealing or conversion of trust assets by transferring the Property into her own trust. In Count II, petitioners sought an accounting, stating their objection to the August 28, 2017 Final Account of Fiduciary because of the lack of any comprehensive accounting of trust finances, particularly income, expenses, taxes, fiduciary fees, and attorney fees, as well as any activities associated with the preservation of trust assets. In Count III, petitioners sought a surcharge to be imposed on the fiduciary equal to the sum paid in trustee's fees, as well as an amount equal to the alleged diminution in value of the trust property stemming from the alleged failure to properly manage trust property and self-dealing.

Lavonne VanDine admitted that she conveyed the Property to the VanDine Family Trust on October 14, 2010. However, Lavonne VanDine maintained that the Property was in her family for generations and that she placed the home into the trust so that she could pay Kevin's medical bills. Lavonne VanDine also admitted that (1) when her husband died, the VanDine Family Trust became irrevocable; (2) Lavonne VanDine was required to send annual accountings to the trust's beneficiaries if the value of the estate was above $100, but maintained that this was completed in 2017 (although, evidently, not for the preceding years following her husband's death); (3) to appease petitioners, she freely offered them a gift of $6,500; and (4) although the Property was owned by the VanDine Family Trust, Lavonne VanDine, as trustee, subsequently conveyed the home to a separate trust. Lavonne VanDine maintained that §2.2 of the trust agreement allowed her to transfer the Property (which she claimed was the trust's sole asset) without restriction during her lifetime. In response to the claim for accounting, Lavonne VanDine maintained that the August 28, 2017 Final Account of Fiduciary was sufficient to fulfill her fiduciary duties. In response to the claim for surcharge, Lavonne VanDine denied that the VanDine Family Trust "suffered any loss whatsoever."

Lavonne VanDine subsequently filed a motion for summary disposition under MCR 2.115(C)(5), (C)(8), and (C)(10), arguing that petitioners did not have a present interest in the trust and that, during her lifetime, she had the absolute right to manage the trust principal as required for her support, comfort, and welfare. As pertinent to this appeal, petitioners countered that after Kevin VanDine's death, the trust property, in accordance with the trust instrument, should have been distributed to the beneficiaries after necessary expenses arising from Kevin VanDine's illness and death were paid. The probate court denied Lavonne VanDine's motion for summary disposition under MCR 2.116(C)(5) and (C)(10). However, under MCR 2.116(C)(8), the probate court agreed that §2.2 of the VanDine Family Trust unambiguously provided that, although the trust became irrevocable upon Kevin VanDine's death, as the surviving settlor-spouse, Lavonne VanDine was entitled to maintain control and management of all trust assets without restriction, which allowed her to transfer the Property to a separate trust. Accordingly, the probate court determined that petitioners were only entitled to a distribution after Lavonne VanDine's death, if there was any trust balance to distribute. The probate court also determined that petitioners, as trust beneficiaries, were entitled to an accounting.

Subsequently, the probate court denied petitioners' motion for reconsideration. Again, the probate court held that, under §2.2, the living settlor-spouse, regardless of the other spouse's death, was entitled to pay to themselves for his or her own benefit, without restriction, such part of the net income and principal of the trust as he or she directed. The probate court reaffirmed its decision that petitioners had no right to distribution of the trust principal while Lavonne VanDine was alive. Petitioners now appeal as of right.

## II. STANDARDS OF REVIEW

This Court reviews de novo a probate court's decision regarding a motion for summary disposition. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). In this case, the probate court granted summary disposition under MCR 2.116(C)(8).

> MCR 2.116(C)(8) permits a trial court to grant summary disposition when an opposing party has failed to state a claim on which relief can be granted. Thus, a motion under this rule tests the legal sufficiency of a claim. The motion may not be supported or opposed with affidavits, admissions, or other documentary evidence, and must be decided on the basis of the pleadings alone. The trial court reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts. A motion for summary disposition under MCR 2.116(C)(8) may be granted only when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. [*Gormon v American Honda Motor Co, Inc*, 302 Mich App 113, 131-132; 839 NW2d 223 (2013) (citations omitted).]

This Court also reviews de novo the probate court's interpretation of a trust agreement as it presents a question of law. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015) (quotation marks and citation marks omitted).

Our goal in interpreting trust language is to determine and give effect to the trustor's intent. [This Court] begins by examining the language of the trust itself, and if there is no ambiguity, we interpret it according to its plain and ordinary meaning. [*Hegadorn v Dep't of Human Servs Director*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket Nos. 156132, 156133, 156134); slip op at 9-10 (citation omitted).]

A mere disagreement between the parties regarding the interpretation of a trust does not mean the trust is ambiguous. *Brown Trust*, 312 Mich App at 693. However, if judicial review of the instrument does not yield the intent of the settlors in drafting the instrument, "in other words, if the document evidences a patent or latent ambiguity," the intent of the settlors can be established by reference to "two external sources[.]" *In re Butterfield's Estate*, 405 Mich 702, 711; 275 NW2d 262 (1979).

An ambiguity is "patent" if the uncertainty as to meaning "appears on the face of the instrument, and arises from the defective, obscure, or insensible language used". An ambiguity is "latent" "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates" the possibility of more than one meaning. [*Id*. n 6, quoting Black's Law Dictionary (4th ed).]

When confronted with an ambiguous document, the two sources we may consult are (1) the circumstances with respect to the drafting of the trust instrument and (2) rules of construction. *Id*. If there is no ambiguity, we resolve disputes regarding the interpretation of the document according to the "four corners of the instrument." *Id*.

## III. ANALYSIS

On appeal, we are asked to consider whether the probate erred in concluding that the trust instrument unambiguously protected Lavonne VanDine's right to manage the trust property following Kevin VanDine's death.

Kevin and Lavonne VanDine's trust instrument, provides, in pertinent part as follows:

ARTICLE II

LIFETIME MANAGEMENT

2.1     Amendment and Revocation. We may, without the consent of anyone, revoke this agreement in whole or in part or amend it in any respect. No amendment shall materially change the trustee's duties, immunities, or compensation without the trustee's prior written approval. The trust property affected by any such revocation shall be distributed as directed.

2.2     Income and Principal. *During our life, the trustee shall pay to us or for our benefit, or as we otherwise direct, such part or all of the net income and principal of this trust as we direct*. However, during any period in which we, in trustee's opinion, are incapable of managing our own affairs, trustee shall pay to

-4-

or use for the benefit of us, our descendants, and others partly or wholly dependent on us, the net income and principal that trustee determines is required for our support, comfort and welfare, in our accustomed manner of living, or for any other purposes trustee believes to be for our best interests.

2.3    Death.  Upon the death of the first of us to die, this agreement shall be irrevocable.  *All property then a part of the trust and all property thereafter added to the trust shall be held, administered and distributed by the trustee in accordance with Article III.*

ARTICLE III

3.1    Taxes, Debts and Expenses.  The trustee may pay from this Family Trust, and shall pay at the direction of the personal representative of my estate: (1) estate, inheritance and other death taxes (except generation-skipping taxes and taxes attributable to any power of appointments), including any interest or penalties thereon, which become payable by reason of my death as a result of property passing under this trust or otherwise; (2) debts that are legally enforceable against my estates; (3) the expenses of my last illness, funeral, burial or other disposition of my body; and (4) the administration expenses of my estates.

3.2    *Family Trust.  The balance of the Family Trust shall be held, administered and distributed as provided in this section.*

*(a) The balance shall be divided into five equal shares.  One share shall be distributed to each of Lavonne's children and one share shall be divided between Kevin's daughters.  No provision has been made for Kevin's sons, not out of any lack of love or affection, but for reasons we deem personal.*  [Emphasis added.]

The parties appear to agree that, at least during their lifetimes and while neither one was otherwise incapacitated, under §2.2, Kevin and Lavonne VanDine maintained a right to direct the payment of income and principal of the trust.  However, what the parties disagree on, and the issue giving rise to this appeal, is what authority Lavonne VanDine possessed following the death of her husband to manage and transfer the corpus of the trust.

As an initial matter, we disagree with the foundational principle underlying the probate court's bench ruling, that being that the language of the trust instrument was unambiguous. Instead, we are of the view that the trust instrument presents a patent ambiguity that inhibits our interpretation to discern the intention of the settlors.  The probate court grounded its ruling in its correct interpretation of § 2.2 of the trust instrument, which clearly manifests the intention of the co-settlors that during their lifetimes, a "part or all of the net income and principal of the trust" be paid to them as they directed.  Conversely, §2.3 of the trust instrument states that "[u]pon the death of the first of us to die, this agreement shall be irrevocable. *All property then a part of the trust and all property thereafter added to the trust shall be held, administered and distributed by the trustee in accordance with Article III.*"  (Emphasis added.)  Article III, §3.2 directs that after

estate, inheritance and death taxes, as well as debts and the expenses of illness and burial are paid from the Family Trust, the balance of the Family Trust is to be distributed into five equal shares to Lavonne VanDine's children, with each receiving one share, and Kevin VanDine's daughters, with one share being divided between them. Viewing the instrument as a whole, the inartful drafting of §2.2 and §2.3 yields a clear uncertainty in the meaning of the instrument and the intentions of the co-settlors. *Butterfield*, 405 Mich at 711 n 6. This is particularly with regard to whether Kevin and Lavonne VanDine intended that the surviving spouse would have unrestrained access to manage the trust property during their lifetime. Put another way, the trust instrument as drafted is not susceptible to only one interpretation, supporting our conclusion that it is ambiguous. See *Michigan Twp Participating Plan v Pavolich*, 232 Mich App 378, 382; 591 NW2d 325 (1998) (recognizing that if a contract "fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.") In our view, the lack of clarity in the instrument arises from "the defective, obscure, [and] insensible language" that was employed in drafting the instrument. *Id*. While we are mindful of our obligation to interpret the trust instrument in a manner that carries out the intention of the co-settlors as "nearly as possible," *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008), our ability to do so here is undermined by the ambiguous drafting of the trust instrument. Our analysis is specifically hindered by the fact that the instrument does not clearly address the authority of each of the co-settlors to manage the trust property during their lifetimes once their spouse predeceased them. Accordingly, remand is necessary for the probate court to hear testimony[1] from (1) Lavonne VanDine, (2) the attorney that drafted the trust instrument and assisted the couple with their estate planning, as well as (3) any others that the probate court and the parties deem necessary, to allow the probate court to clearly ascertain the intentions of both Lavonne and Kevin VanDine with regard to the disposition of the trust property once the other spouse predeceased them. MCR 7.216(A)(5), (9). The probate court may also consider documentary evidence on this issue.[2] Once the probate court has the benefit of a full evidentiary record, it may reconsider its order granting summary disposition in favor of Lavonne VanDine.

## IV. CONCLUSION

We vacate the probate court's order granting summary disposition in favor of Lavonne VanDine and remand this case to allow the probate court to hear testimony and consider additional evidence to allow the probate court to ascertain the intentions of the settlors of the trust instrument with regard to the disposition of the trust property by the surviving spouse.

---

[1] As noted earlier in this opinion, Lavonne VanDine also sought summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of any material fact).

[2] The record reflects that the probate court suspended discovery following its bench ruling at issue in this appeal. The probate court may decide to reopen discovery to fully canvass the issue of Kevin and Lavonne's VanDine's intentions with respect to their management of the trust corpus during their lifetime following the passing of the other spouse.

We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ James Robert Redford