*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LARRY S. BERMAN REVOCABLE LIVING TRUST.

---

MICHAEL HORDS, KYLE HORDS, and ANDREW HORDS,

      Appellants,

v

TERRI A. CHAPMAN, Individually and as Successor Trustee of the LARRY S. BERMAN REVOCABLE LIVING TRUST, and NICHOLAS S. BERMAN,

      Appellees.

UNPUBLISHED
February 1, 2024

No. 364315
Oakland Probate Court
LC No. 2022-408351-TV

---

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

In this dispute over a trust, appellants, Michael, Kyle and Andrew Hords, appeal as of right the probate court's order interpreting the trust document, denying partial summary disposition, and appointing a special fiduciary. We reverse the probate court's order and remand for entry of an order granting the petition to terminate the relevant trusts and for further proceedings.

## I. BACKGROUND

The Larry S. Berman Revocable Living Trust was established in the 1980s by Larry Berman, the founder of MNP Corporation. Shares in MNP Corporation and other related businesses make up a significant part of the trust's assets. After forming the trust, Larry amended it several times, culminating in its final incarnation, the fourth restatement of the trust, executed in January 2014. Larry died in November 2014, and his three children survived him: appellees Nicholas Berman and Terri A. Chapman, and Dana Berman. Chapman is the CEO of MNP and the successor trustee of the trust.

-1-

The trust provides for the disposition of certain assets held by Larry upon his death. "Article Fourth" of the trust governs the assets at issue and their disposition. The parties agree that whether appellants are to receive the assets at issue in trust, or free from trust, is controlled by §§ (A) and (B)(2) and (7), and that these provisions are unambiguous. They disagree, however, on the application of these unambiguous provisions.

Section A of Article Fourth provides for the division of certain assets into three equal shares for each of Larry's children, and for the creation of separate trusts for each of his children still alive at the time of his death to hold each child's share of the assets. Those trusts are to be administered as set forth in the parts of the trust (§ (B)(1)(a) and (B)(2)(a)) pertaining to trusts for Larry's "Children":

> Upon my death, all of the remaining principal of the FAMILY TRUST together with all accrued and undistributed income shall be divided into equal shares, subject to clauses (i) through (iii) below, one for each child of mine who shall then be living and one for each child of mine who predeceases me leaving issue surviving. In the event that a child of mine predeceases me, his or her share shall be divided into equal shares for his or her living issue per stirpes and not per capita. If a deceased child of mine leaves no issue surviving, his or her share shall be divided equally among the shares of my remaining children and the issue by right of representation per stirpes and not per capita of deceased children. Each share set aside for a child of mine shall be held in a separate trust and disposed of as set forth below in the section applicable to Children. Each share set aside for the issue of a deceased child of mine (sometimes referred to as a "beneficiary" below), shall be held in a separate trust and disposed of as set forth below in the section applicable to Grandchildren.

This section provides for the division of a deceased child's share equally among that child's living issue with subtrusts ("Grandchild trusts") established to administer those assets, but only "in the event a child of [Larry's] predeceases" him.

> Section (B)(7) of the trust provides for the termination of a trust when its beneficiary dies:

> In any event each beneficiary's trust shall terminate no later than the beneficiary's death. Trustee shall distribute the then remaining trust property to the issue of the deceased beneficiary by right of representation per stirpes and not per capita. If a deceased beneficiary leaves no issue surviving, his or her share shall be divided equally among the shares of my remaining children and the issue by right of representation of the deceased children.

Dana died in February 2021. Appellants expected, under the terms of § (B)(7), that Chapman, as trustee, would distribute the assets in Dana's trust to them. They alleged that Chapman first told them that she would do so, but that she needed to await an audit and closing letter from the Internal Revenue Service with respect to Larry's estate-tax return. And, after learning of the completion of the IRS audit, they sought distribution of the assets but Chapman told them that she was required to create a subtrust for each appellant, and distribute Dana's trust's assets equally among the new subtrusts.

As a result, appellants filed a petition seeking in relevant part to terminate Dana's trust, as they assert § (B)(7) requires. Nicholas and Chapman argued that, because § (B)(7) did not provide that a terminated trust's assets be paid to a deceased beneficiary's issue "outright," and because the trust contained instructions for administering "Grandchild trusts" which would be meaningless if Dana's trust assets were not to be transferred to new trusts for appellants' benefits, Chapman was compelled to continue to hold the assets in trust.

The probate court agreed with appellees that § (B)(7) rendered the text of Subsection (2) "nugatory" because "that provision does not exist in a vacuum. It just doesn't. So it is not dispositive." The probate court, in an "attempt to read the [instrument] as a whole," reasoned that § (B)(7) "makes no sense" because the trust provided that Dana would never receive trust assets outright so the trust should not be read to conclude that appellants would either. The probate court accordingly ruled that Chapman should transfer the assets from Dana's trust in equal parts to subtrusts for the three appellants. The probate court also determined that it was necessary to have further investigation of appellants' other claims, and ordered the appointment of a special fiduciary charged with the power and duty to fully investigate appellants' claims and the nature and extent of trust assets. This appeal followed.

## II. ANALYSIS

The dispositive question involves a determination whether the probate court's interpretation of the trust was consistent with the plain language of the trust.

This Court reviews the interpretation of trusts de novo. *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013). "The intent of the settlor is to be carried out as nearly as possible. This intent is gauged from the trust document itself, unless there is ambiguity." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008), citing *In re Maloney Trust,* 423 Mich 632, 639; 377 NW2d 791 (1985). "The fact that litigants disagree regarding the meaning of a trust, however, does not mean that it is ambiguous." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). Although a court "must attempt to construe the instrument so that each word has meaning," *In re Kostin*, 278 Mich App at 53, "a court must enforce the plain and unambiguous terms of a trust as they are written," *Brown Trust*, 312 Mich App at 694.

In reviewing the unambiguous language of the relevant trust provisions, we conclude that upon Dana's death, the assets in her trust were to be distributed to her children, and not placed into Grandchild trusts. The plain language of § A shows that Larry's intent was to divide the trust property equally among his three children to benefit and support them during their lives, and to provide for a contingency if one of his children did not survive him. In the latter scenario, the share intended to be held in trust for the predeceased child would instead be held in trust for that predeceased child's issue under the provisions applicable to "Grandchild trusts." This is the inescapable conclusion from the language of Article A and Article Fourth, §§ (B)(1)(a) and (B)(7). Under these provisions, upon Larry's death the income shall be divided between his children, one share per child whether living or not at the time of his death. For his children that were alive at the time of his death, the assets were to be placed into a trust "and disposed of as set forth below in the section applicable to Children." For any child of his that did not survive his death, the share was to be divided amongst the issue of that child, and "be held in a separate trust and disposed of as set forth below in the section applicable to Grandchildren." Because all three children survived

-3-

Larry's death, the provision for placing assets into trusts under the section dealing with Grandchildren did not come into play.

Pursuant to these clear directives, upon Larry's death trusts for Children were established for Dana, Nicholas and Chapman, as they each survived Larry's death. And, upon Dana's death, section (B)(7) provided that the trust created for her "shall terminate" no later than on her death. At that point, the trustee "shall distribute the then remaining trust property to the issue of the deceased beneficiary [appellants] by right of representation per stirpes and not per capita." This Chapman failed to do, and by instead creating Grandchildren trusts, acted contrary to the express language of the trust.

Appellees argue, and the probate court agreed, that transferring the property from Dana's trust to new "Grandchild trusts" was required because the trust provided instructions for administration of Grandchildren trusts, and if Dana's death did not trigger the transfer of her trust's property to Grandchildren trusts, those provisions would be rendered nugatory. But this is not the case. That the contingency of one of Larry's children not surviving his death was never triggered, and thus the alternate plan never put into place, does not render the language regarding Grandchildren trusts nugatory. Those words had meaning—they set forth a plan for the unexpected but possible death of one of his children (who also had issue) before his own death. Having provided a contingency for *dividing* his property if a child predeceased him, it stands to reason that he would also need a contingency for *administering* the trust property that would go to any grandchildren who would be the beneficiaries in place of their parent who was a predeceased child of his—that is why the portions of § B dealing with "Grandchild trusts" are included. Trust language included for a contingency that is never triggered is not devoid of meaning simply because the contingency does not occur.

Chapman also quotes a portion of Article Fourth, § (B)(4), which empowers the trustee to delay making distributions under certain circumstances:

> **Discretion to Delay Distributions**. Notwithstanding anything in this Section regarding Income and Principal to the contrary, the Trustee may, in its discretion, delay income or principal distributions to any Child or any Grandchild for as long as the Trustee determines to be necessary under the circumstances, if the Trustee deems such delay advisable because of financial, medical, physical, educational, marital or other problems or needs of such Child or such Grandchild.

This subsection has no application here, for no one has asserted that Chapman, as trustee, had any basis under § (B)(4) to withhold from appellants any distributions of trust property.

Chapman also insists § (B)(6) mandates that the trust property be held in trust for appellants rather than distributed outright. But this argument is premised on a selective reading of the section that fails to acknowledge that § (B)(6) applies to only trusts created under § (B)(5), and Dana's trust is not the kind of trust to which either § (B)(5) or (B)(6) actually applies. Instead, through a

combination of omission and selective editing, Chapman appears to attempt to make § (B)(6) more generally applicable than it actually is.[1]

We likewise reject Chapman's argument that § (B)(7) actually supports her position because § (B)(7) does not explicitly state that a deceased beneficiary's issue is entitled to an "outright" distribution, as well as the curious assertion that the inclusion of the term "per stirpes" mandates the result ordered by the probate court. Although the word "outright" does not appear in § (B)(7), it does not need to in order to convey that point, as the words used are clear that the remaining trust property be transferred *to appellants* under that subsection. And the term "per stirpes" does not refer to the mechanism for distributing trust property, but only to the method of dividing it into shares. And it is not inconsistent with the terms of this trust to have a descendant of Larry receive trust property outright after the original beneficiary dies—indeed, appellees' proposed construction of the trust language would essentially require perpetual reconveyance of trust property into new trusts.

Further, § (B)(7) specifically uses the word "terminate" to describe what happens to a beneficiary's trust when that beneficiary dies: that trust "shall terminate no later than the beneficiary's death." "The use of the word 'shall' denotes mandatory action." *Wolfenbarger v Wright*, 336 Mich App 1, 31; 969 NW2d 518 (2021). And *Black's Law Dictionary* (11th ed) defines "terminate" as "[t]o put an end to; to bring to an end" or "[t]o end; to conclude." See also *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 621 n 62; 886 NW2d 135 (2016) ("If the definitions are the same in both a lay dictionary and legal dictionary, it is unnecessary to determine whether the phrase is a term of art, and it does not matter to which type of dictionary this Court resorts.").[2] The probate court's construction of the trust does not "put an end to" Dana's trust— instead it perpetuates it. And, as appellants point out in their brief, MCL 700.7821 provides that "[u]pon the occurrence of an event terminating or partially terminating a trust, the trustee *shall* proceed expeditiously to distribute the trust property to the persons entitled to it, subject to the right of the trustee to retain a reasonable reserve for the payment of debts, taxes, and expenses . . . ." MCL 700.7821(2) (emphasis added).

Here, the trustee simply withheld the entire trust, and not for the purpose of retaining a reserve for expenses, but instead for the purpose of maintaining control over the trust property. Accordingly, Chapman cannot be said to have retained the trust property for a permissible reason

---

[1] Section (B)(6) does not have general application, but instead applies only to generation skipping trusts (GST)-exempt trusts created under § (B)(5): "[i]f a Grandchild dies before receiving all the trust property held for him or her *in a GST Exempt Trust*, leaving issue surviving him or her, then the remainder of such trust property shall be allocated per stirpes among the then surviving issue of such deceased Grandchild, and the trust property allocated to each such issue shall be held in a separate trust . . ." (emphasis added)). The parties nowhere assert that any of the trust property is being held, or would need to be held, in a GST-exempt trust. Contrary to Chapman's assertion, § (B)(6) relates only to property that may be held for appellants' benefit in a "GST Exempt Trust," and has no bearing on the issue presented here.

[2] Merriam-Webster's dictionary contains a similar definition. *Merriam-Webster Collegiate Dictionary* (11th ed), p 1289.

-5-

under the statute, nor does she assert that there is any provision of the trust that overrides the statutory mandate to distribute the remaining trust property in Dana's trust to appellants. Both the statute and § (B)(7) mandate that the trustee terminate Dana's trust and distribute the property to appellants. Because Chapman has refused to do so, the probate court improperly denied appellants' petition to terminate the trust, and improperly ordered Chapman to transfer the property to new subtrusts for appellants' benefit with Chapman as trustee.

We reverse the probate court's order and remand for entry of an order granting the petition to terminate the trust and ordering Chapman to transfer the property from Dana's trust to appellants, and for any further proceedings. We do not retain jurisdiction. Appellants may tax costs, having prevailed in full. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates