*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA DICE, MARCIA BENNETT-VEIGEL, and CAROL HARRINGTON,

UNPUBLISHED
July 30, 2019

Plaintiffs-Appellants,

v

No. 342608
Midland Probate Court
LC No. 17-000126-CZ

MICHAEL R. ZIMMERMAN, Successor Trustee of the ESTHER G. BENNETT TRUST, YEO & YEO, PC, and TODD E. BENNETT,

Defendant-Appellee.

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

In this interlocutory appeal, plaintiffs appeal by delayed leave granted[1] the opinion and order of the probate court granting partial summary disposition to defendants pursuant to MCR 2.116(C)(7) (claim barred by statute of limitations) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted).[2] Plaintiffs contend that the probate court erred in concluding that a statute of limitations contained in the Michigan Trust Code (MTC), MCL 700.7604, barred plaintiffs' claims challenging the validity of the Esther G. Bennett Revocable

---

[1] *Dice v Esther G Bennett Revocable Trust*, unpublished order of the Court of Appeals, entered July 16, 2018 (Docket No. 342608). Plaintiffs previously attempted to appeal the probate court's order as of right, but this Court dismissed the appeal on the basis that the probate court's order was not a final order. *Dice v Esther G Bennett Revocable Trust*, unpublished order of the Court of Appeals, entered February 7, 2018 (Docket No. 342139).

[2] The probate court dismissed plaintiffs' claim for declaratory relief challenging the Esther G. Bennett Revocable Trust, and dismissed plaintiffs' claims involving undue influence and conversion. Still pending before the probate court are plaintiffs' claims of fraud, misrepresentation, and breach of fiduciary duty.

-1-

Trust (the Trust)—one claim for declaratory relief and one claim involving undue influence. Plaintiffs also contend that the probate court erred in determining that plaintiffs lacked standing to pursue a claim of conversion on behalf of the Trust. We agree and reverse.

## I. FACTUAL BACKGROUND

Plaintiffs are the daughters and defendant Todd E. Bennett (Todd) is the son of the settlor, Esther G. Bennett (Esther). Following the death of her husband, in 1995, Esther settled the Trust. The assets contained in the Trust primarily consisted of Esther's interest in real property and a closely held business—Earl D. Bennett Construction, Inc. (Bennett Construction). The Trust generally provided that the assets would be equally distributed to Esther's children upon her death.

During her lifetime, Esther was to be the sole trustee of the Trust, and reserved in herself a number of rights and powers as the settlor, including the right to amend, modify, or revoke the Trust, and to designate different trustees or cotrustees at any time to act on Esther's behalf. The Trust also provided that, if Esther was ever incapacitated and her incapacity certified by two doctors, any further actions taken by Esther with respect to the Trust would be void, "and during such period of time th[e] Trust shall be irrevocable and not amendable." The Trust further listed Gordon C. Birkmeier as Esther's successor trustee, and provided that, if Birkmeier died or resigned, Chemical Bank and Trust (Chemical Bank) and plaintiff Carol Harrington would be nominated successor cotrustees.

In 2002, Esther executed the first of several amendments to the Trust. The first amendment deleted the nomination of Harrington, instead indicating that, in the event of Birkmeier's death or resignation, only Chemical Bank would serve as successor trustee. In 2003, Esther executed the second amendment to the Trust, indicating that, although the children would each receive equal shares of Bennett Construction, Todd would receive all of the voting shares and plaintiffs would receive nonvoting shares. Thus, while the children would have equal ownership of the business, Todd would control it. In 2006, however, Esther executed another amendment to the Trust—also titled the second amendment—which revoked the 2003 amendment. The 2006 amendment also provided any gifts or loans from Esther to her children would be considered advances on their interests in the Trust.

In 2007, Dr. Christopher Hough performed a geriatric assessment of Esther, and in a letter dated April 18, 2007, informed Esther's primary care physician—Dr. Michael Miller—that Esther was experiencing memory loss and needed "help[] with her finances and medications." Two months later, Esther appointed defendant accounting firm, Yeo & Yeo, PC (Yeo), to act as her cotrustee, with the condition that Yeo would only serve as trustee for as long as Birkmeier was associated with the firm. Shortly after appointing Yeo, Esther executed the third amendment to the Trust, indicating that Yeo would be nominated to act as sole trustee upon Esther's death or resignation so long as Birkmeier was associated with the firm, and at such time that Birkmeier was no longer associated with the firm, Chemical Bank would serve as Yeo's successor.

One year after Dr. Hough performed his geriatric assessment, on May 6, 2008, Dr. Miller noted on a prescription pad that Esther was "not capable of participating in business affairs[.]" Shortly thereafter, presumably acting in accordance with the Trust's provision regarding Esther's

incapacity, defendant Michael R. Zimmerman sent a letter to Esther on behalf of defendant Yeo, which stated, "Please accept this letter as our acceptance to act as Trustee of the Esther G. Bennett Revocable Trust with Gordon C. Birkmeier representing the firm as Trustee."

Despite Esther's ostensible incapacity and the letter of acceptance, and without any medical certifications indicating that Esther had regained the capability to manage her affairs, in October 2008, Esther signed a document that reinstated the previously revoked 2003 amendment, again providing that only Todd would receive voting shares of Bennett Construction. Esther indicated underneath her signature that she was a cotrustee of the Trust, and notably, Birkmeier signed the document as a witness. In 2011, Esther executed the fourth amendment to the Trust, again altering trustee succession. The amendment provided that Yeo would serve as sole trustee upon Esther's death or resignation, deleting the condition that Yeo would only so serve if Birkmeier were associated with the firm. On the same day that Esther executed the amendment, she appointed Zimmerman "and/or a qualified person of Yeo & Yeo CPA PC" to serve as her cotrustee.

In 2012, Esther executed the fifth and final amendment to the Trust. The amendment revoked all previous amendments, provided that Zimmerman "and/or a qualified person of Yeo & Yeo PC CPA" would become sole trustee upon Esther's death or incapacity, and reaffirmed that Todd would receive the voting shares of Bennett Construction. The amendment did not provide for distribution of any nonvoting shares, and instead, the day before executing the 2012 amendment, Esther settled a second trust—the Esther G. Bennett Irrevocable Trust (the Irrevocable Trust)—which she funded with the nonvoting shares of Bennett Construction for the purpose of distributing them to plaintiffs upon her death.

Esther died on May 14, 2014, and Zimmerman was nominated to serve as her personal representative. Zimmerman sent a letter to plaintiffs indicating that Esther appointed him trustee of the "Bennett Family Trust Established on May 12, 2014."[3] The letter further indicated that Zimmerman was settling Esther's estate, after which he would begin distributing the Trust estate. Finally, Zimmerman indicated:

> Linda, Marcia, and Carol now each own 25% of Earl D. Bennett Construction according to the terms of "The Esther G. Bennett Irrevocable Trust dated December 19, 2014[.]" These shares of the Company are non-voting. The voting share of the Company stock are currently held by the Trust and will be distributed to Todd per your mother's instructions.
>
> I am enclosing copies of the final will and trust for you to have.

Notably, enclosed with the letter were copies of Esther's will and the Irrevocable Trust established in 2012, but not a copy of the original trust or any of its amendments.

---

[3] Although originally titled the Esther G. Bennett Revocable Trust, the Trust provided that it would be known as "the Bennett Family Trust" upon Esther's death.

Plaintiff Linda Dice averred that she met with Zimmerman after Esther's death, but that Zimmerman never gave her or her fellow plaintiffs reason to know that the original trust or any of its amendments existed until Zimmerman finally referred to the Trust in the summer of 2016. In September 2016, Zimmerman provided plaintiffs copies of the Trust, and approximately five months later, On February 16, 2017, plaintiffs filed the complaint that led to this appeal. Plaintiffs requested a declaration that all amendments to the Trust executed after April 2007 were void because Esther did not have capacity to execute them, and because Esther was unduly influenced by Todd and Zimmerman. Plaintiffs alleged fraud and misrepresentation, breach of fiduciary duties, and conversion of trust assets against all three defendants, and sought to remove Zimmerman as trustee, surcharge him, and replace him with Chemical Bank.

Todd moved for partial summary disposition pursuant to MCR 2.116(C)(7) and (C)(8), contending that (1) plaintiffs were barred by the statute of limitations, MCL 700.7604, from challenging the validity of the Trust, and (2) plaintiffs lacked standing to bring a conversion claim on behalf of the Trust. Plaintiffs countered that the Trust became irrevocable after Esther was deemed incapacitated in 2008, and the statute of limitations did not apply to irrevocable trusts. Alternatively, plaintiffs contended that the statute of limitations had been tolled pursuant to the fraudulent concealment statute, MCL 600.5855. Plaintiffs further contended that they had standing to bring their conversion claim because Yeo could not have properly served as a trustee pursuant to MCL 487.11105, and accordingly, there had been no valid trustee since Yeo was appointed in 2008. Without a proper trustee, plaintiffs contended that they had standing to pursue their conversion claim on behalf of the Trust.

The probate court agreed with Todd that plaintiffs' claim for declaratory relief against the Trust was barred by the statute of limitations, holding that the statute applied to the trust because it was revocable within the meaning of MCL 700.7103(h). The court noted: "[A]lthough the trust document itself states that should Esther become incapacitated the trust becomes irrevocable, the statutory language makes clear that a trust created as revocable[] retains its characterization as such, even in the face of a lack of capacity." The court held that plaintiffs could not rely on the fraudulent concealment statute—MCL 600.5855—because it was enacted as part of the Revised Judicature Act (RJA) nearly 40 years before the applicable MTC statute— MCL 700.7604. It reasoned that MCL 700.7604 was an all-encompassing statute of limitations that did not allow for exceptions to the general rule that an action to contest the validity of a revocable trust cannot be brought beyond two years from the settlor's death. The court further noted that, even assuming arguendo that fraudulent concealment applied, the facts did not support a finding that defendants concealed the Trust. Thus, based upon the statute of limitations, the probate court dismissed plaintiffs' claim for declaratory relief and claim alleging undue influence. With respect to the claim for conversion, the probate court agreed with Todd that plaintiffs lacked standing, reasoning that claims belonging to the trust were the responsibility of the trustee. We disagree and reverse.

## II. THE STATUTE OF LIMITATIONS

Plaintiffs first contend that their claims against the Trust did not exceed the statutory limitation period because the statute of limitations applies only if a trust is revocable at the time of the settlor's death, and in this case, the Trust became irrevocable when Esther was incapacitated in 2008. The probate court did not address the factual question of whether, under

the terms of the Trust, the Trust became irrevocable in 2008, instead holding that MCL 700.7103(h), which describes the revocability of a trust as "not affected by the settlor's lack of capacity," was dispositive on the issue. Because MCL 700.7105 provides that the terms of a trust generally prevail when in conflict with the MTC, and because no exception to that general rule applies, we disagree with the probate court's reliance on MCL 700.7103(h).

" 'This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo.' " *Russell v City of Detroit*, 321 Mich App 628, 631; 909 NW2d 507 (2017), quoting *Trentadue v Buckler Automatic Law Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). "In reviewing the record to determine if defendant was entitled to judgment as a matter of law, we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings in plaintiff's favor." *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 638; 692 NW2d 398 (2004), citing *Rheaume v Vandenberg*, 232 Mich App 417, 420-421; 591 NW2d 331 (1998). We accept all of a plaintiff's well-pleaded allegations as true. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (quotation marks and citation omitted). "Absent a disputed question of fact, the determination of whether a cause of action is barred by a statute of limitation is a question of law that this Court reviews de novo." *Doe*, 264 Mich App at 638, citing *Colbert v Conybeare Law Office*, 239 Mich App 608, 613-614; 609 NW2d 208 (2000). We also review questions of statutory interpretation de novo. *Stanton v City of Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002), citing *In re MCI Telecommunications*, 460 Mich 396, 413; 596 NW2d 164 (1999). Finally, we review the proper interpretation of trusts de novo. *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013).

When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The language of the statute itself is the primary indicator of the Legislature's intent. *Id*. If the statute's language is unambiguous, this Court must enforce it as written. *Id*. at 12-13.

The statute of limitations at issue, MCL 700.7604, provides as follows:

> (1) A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of the following:
>
> (a) Two years after the settlor's death.
>
> (b) Six months after the trustee sent the person a notice informing the person of all of the following:[4]

---

[4] While defendants briefly argue that the six-month limitation period should apply, Zimmerman's letter did not inform plaintiffs of the time allowed for commencing a proceeding.

(*i*) The trust's existence.

(*ii*) The date of the trust instrument.

(*iii*) The date of any amendments known to the trustee.

(*iv*) A copy of relevant portions of the terms of the trust that describe or affect the person's interest in the trust, if any.

(*v*) The settlor's name.

(*vi*) The trustee's name and address.

(*vii*) The time allowed for commencing a proceeding.

Historically, whether a trust was revocable or irrevocable "is a question of the intention of the settlor[.]" *Fornell v Fornell Equipment, Inc*, 390 Mich 540, 551; 213 NW2d 172 (1973).[5] "Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust." MCL 700.7602(1).

The probate court relied upon the statutory definition of "revocable" as contained in MCL 700.7103(h) to determine that the Trust remained revocable until Esther's death. The statute provides,

"[r]evocable", as applied to a trust, means revocable by the settlor without the consent of the trustee or a person holding an adverse interest. A trust's characterization as revocable is not affected by the settlor's lack of capacity to exercise the power of revocation, regardless of whether an agent of the settlor under a durable power of attorney, a conservator of the settlor, or a plenary guardian of the settlor is serving. [MCL 700.7103(h).]

Although the statute clearly provides that a settlor's capacity to exercise the power of revocation does not affect the revocability of a trust, MCL 700.7105(1) provides that the MTC "governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a trust beneficiary," "[e]*xcept as otherwise provided in the terms of the trust.*" (Emphasis added.) MCL 700.7105(2) then provides, "[t]he terms of a trust prevail over any provision of this article," unless one of the exceptions enumerated in the statute apply. See *In re Pollack Trust*, 309 Mich App 125, 164; 867 NW2d 884 (2015) (noting that, unless an enumerated exception applies, "the terms of a trust prevail over any provision of the MTC"). No exception applies in

---

Accordingly, the letter did not inform plaintiffs of *all* of the requirements for the six-month period to apply.

[5] This subsection does not apply to "[a] trust created under a trust instrument executed before April 1, 2010." MCL 700.7602(1)(a). The Trust was created under an instrument executed in 1995.

this case, and accordingly, the probate court erred in ignoring the terms of the Trust in favor of the statutory definition of revocable.

That the terms of a trust generally prevail over the MTC is in keeping with the primary goal of trust interpretation: to carry out the settlor's intent to the greatest extent possible. *Stan Estate*, 301 Mich App at 442, citing *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "When interpreting the meaning of a trust, this Court must ascertain and abide by the intent of the settlor." *In re Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013), citing *Kostin Estate*, 278 Mich App at 53. "This intent is gauged from the trust document itself." *Kostin Estate*, 278 Mich App at 53, citing *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985).

The Trust in this case provides the following regarding the incapacity of the settlor:

> In the event two registered physicians, one of whom should be the Grantor's personal physician, deliver an instrument to the Successor Trustee certifying that the Grantor during her lifetime has become incapable of managing her own affairs, the Grantor shall cease to be the Trustee, and the successor trustee shall, upon giving its acceptance of trust, become sole Trustee without requiring action or permission of any nature or kind whatsoever from the Grantor, and shall possess and be subject to those rights, duties and obligations which it would assume if it had been named as the initial trustee hereunder. Until two registered physicians shall certify that Grantor has again become capable of managing Grantor's own affairs, any attempt by Grantor to exercise any reserved rights and powers under this Trust, including but not by way of limitation, the right of modification, revocation, amendment, withdrawal or principal and/or receipt or direction of income, or the sale of principles of this trust estate, or change of beneficiary of any insurance policy subject to this Trust, shall be void and during such period of time this Trust shall be irrevocable and not amendable.

We conclude that this language rendered the Trust irrevocable upon Esther's incapacity, and viewing the evidence in a light most favorable to plaintiffs, Esther was indeed incapacitated in 2008. In 2007, Dr. Hough indicated that Esther had been diagnosed with dementia and "need[ed] help with her finances and medications." On May 6, 2008, Dr. Miller indicated that Esther was "not capable of participating in business affairs[.]" Zimmerman then sent Esther a letter of acceptance on behalf of Yeo indicating that Yeo accepted its position as trustee.

Todd contends that the geriatric assessment provided by Dr. Hough and the note from Dr. Miller could not constitute the "certification[s] of incompetency" required by the Trust. We note, however, that the Trust does not appear to impose any particular requirements on the certificates other than the requirement that they be delivered to the successor trustee. Moreover, whether the geriatric assessment from Dr. Hough and the note from Dr. Miller were sufficient under the terms of the Trust are questions the probate court has yet to address. See *Shah v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018) (noting that this Court is an error-correcting court that generally limits its review to matters actually decided by the trial court). See also *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 539-540; 847 NW2d 657 (2014) (interpreting the language of an insurance policy and, where the trial court had not made

the requisite findings of fact, remanding to the trial court to determine the policy's factual application).

Lastly, all of the defendants contend that, irrespective of whether the Trust was made irrevocable in 2008, the terms of the Trust provide that it could only have been made *temporarily* irrevocable. This is not so, as the Trust plainly indicates that it became irrevocable following certification of Esther's incapacity, "[u]ntil two registered physicians shall certify that Grantor has again become capable of managing Grantor's own affairs." The language of the Trust plainly indicates that, so long as Esther remained incapable of managing her affairs, the Trust remained irrevocable, and notably, there have been no allegations that Esther's condition improved after 2008 such that she again became capable of managing her affairs, let alone allegations that two doctors certified that improvement.

Because the language of the Trust prevails over the statutory definition of revocable, a certified inability on the part of Esther to manage her own affairs would have rendered the Trust irrevocable. The probate court therefore erred in applying MCL 700.7604 to bar plaintiffs' challenges to the Trust. In light of our conclusion that the probate court erred in applying MCL 700.7604, we need not address whether fraudulent concealment, MCL 600.5855, is applicable to claims made pursuant to the MTC, nor whether there is any conflict between MCL 600.5855 and MCL 700.7604.

## III. MCL 487.11105

Plaintiffs next contend that Yeo is prohibited from serving as a fiduciary pursuant to MCL 487.11105. We would tend to agree that the evidence does not suggest that Yeo & Yeo, PC, is itself qualified to serve in a fiduciary role under the laws of this state. The Banking Code of 1999, MCL 487.11101 *et seq*., provides that "only an individual or corporation shall act as a fiduciary in this state." MCL 487.11105(2). Generally, however, only banking corporations are permitted to act as fiduciaries, and a nonbanking corporation is only so permitted "to the extent that it may be specifically authorized to act as a fiduciary in this state by another statute of this state." MCL 487.11105(2)(e). Notwithstanding, we note that the probate court did not address this issue, and whether MCL 487.11105 is implicated in this case at all largely depends on the success of plaintiffs' claim that Esther was properly certified incapable of managing her affairs pursuant to the terms of the Trust. As noted above, that issue should be addressed at the trial level.

## IV. CONVERSION AND STANDING

Plaintiffs lastly argue that the probate court erred when it determined that they lacked standing to pursue a conversion claim on behalf of the Trust. The probate court concluded that plaintiffs lacked standing to bring the claim because they were not real parties in interest. We disagree, and conclude that plaintiffs had standing to invoke the probate court's jurisdiction.

This Court reviews issues of standing de novo, *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011), and reviews whether a plaintiff is a real party in interest de novo. *In re Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013). "Both the doctrine of standing and the included real-party-in-interest rule are prudential limitations on a

litigant's ability to raise the legal rights of another." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621-622; 873 NW2d 783 (2015), citing *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355-356; 792 NW2d 686 (2010), and *Rottenberg Living Trust*, 300 Mich App at 355. "[A] litigant has standing whenever there is a legal cause of action." *Lansing Schs*, 487 Mich at 372. Standing is a jurisdictional question, *Rottenberg Living Trust* 300 Mich at 355, which "focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable," *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). "The real party in interest is one who is vested with the right of action as to a particular claim, or, stated otherwise, is the party who under the substantive law in question owns the claim asserted." *Pontiac Police*, 309 Mich App at 622, citing *Rottenberg Living Trust*, 300 Mich App at 356.

First, although not raised by the probate court or any of the parties, MCL 700.7813 is dispositive on this issue. The statute provides:

> (4) If a person embezzles or wrongfully converts trust property, or refused, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, or the beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee. [MCL 700.7813(4).]

There is no dispute that plaintiffs were beneficiaries of the Trust; they were entitled to the residue of the Trust estate in equal shares. Accordingly, plaintiffs were statutorily authorized to assert their claim of conversion on behalf of the Trust.

Even assuming arguendo, however, that MCL 700.7813(4) did not apply, this Court has held that trust beneficiaries are "interested persons" within the meaning of MCL 700.1105(c), and interested persons have standing to invoke the probate court's jurisdiction over the administration of any trust to which they are a beneficiary. *Rottenberg Living Trust*, 300 Mich App at 355, citing MCL 700.1105(c), MCL 700.7201(1), and MCL 700.7203(1). Additionally, while it is true that a trust beneficiary generally may not maintain an action at law against third parties where the trustee is entitled to do so, a beneficiary *may* sue in equity if a trustee refuses or neglects to sue. *Apollinari v Johnson*, 104 Mich App 673, 675-676; 305 NW2d 565 (1981) (citations omitted). Plaintiffs' conversion claim necessarily involves implications that Zimmerman not only failed to bring a necessary suit to protect Trust assets, but that he unlawfully converted Trust property. As trust beneficiaries, plaintiffs asserted a legal cause of action and were the proper parties to request adjudication of the issue. Accordingly, the trial court erred in dismissing their conversion claim.

## V. CONCLUSION

The probate court's opinion and order dismissing plaintiffs' claims involving declaratory relief, undue influence, and conversion is reversed, and this matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs, as the

prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron