*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARY INVESTMENTS, LLC, doing business as
CONSANO PROVISIONING,

        Plaintiff-Appellant,

v

CITY OF MOUNT PLEASANT,

        Defendant-Appellee.

FOR PUBLICATION
July 14, 2022
9:20 a.m.

Nos. 356707; 357862
Isabella Circuit Court
LC No. 2020-016662-CZ

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

YATES, J.

Michigan voters have generally decriminalized both medical and recreational marijuana as a matter of state law, but municipalities nonetheless have retained the power to limit or completely prohibit marijuana establishments within their boundaries. Beyond that, municipalities that permit such establishments can, by ordinance, require those establishments to obtain a municipal license, but a municipality cannot impose qualifications for licensure that are inconsistent with Michigan marijuana laws or with rules promulgated by the Department of Licensing and Regulatory Affairs. And if a municipality limits the number of available licenses, the municipality must "decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with" Michigan marijuana laws. See MCL 333.27959(4). Here, Plaintiff Cary Investments, LLC d/b/a Consano Provisioning (Cary) was one of ten applicants for a license to act as a recreational marijuana retailer, but Defendant City of Mount Pleasant (City) chose other applicants instead of Cary. Cary responded to that decision with jeremiads and litigation, but the City and the trial court rejected all of Cary's challenges. Because we agree with the trial court that the City acted within its authority in denying Cary's application for a license, we affirm as to every claim properly before us on appeal.

## I. FACTUAL BACKGROUND

On September 9, 2019, the City adopted Ordinance No. 1046 authorizing the operation of three recreational marijuana retailers within the city limits. The City accepted license applications beginning in January 2020, promising that if more than three applicants sought licenses, "the City

will decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with" Michigan marijuana laws. See Mount Pleasant Ordinance No. 1046, § 115.03(e)(1). By ordinance, the City set forth nine criteria to be considered, *id.*, and set up a selection committee consisting of the city clerk, the city planner, and the director of public safety. *Id.*, § 115.03(e)(2). The selection committee was assigned the task of holding a public meeting where it would award points to each applicant "for each criterion that is satisfied" and, "based on the resulting scores, select applicants who are best suited to operate in compliance with" Michigan marijuana laws. *Id.*, § 115.03(e)(3). By ordinance, the decision of the selection committee was deemed "final" and was "not appealable to the City Commission, City Zoning Board of Appeals, or any other City official or body." *Id.*

Ten applicants sought a license to operate as a recreational marijuana retailer, so the City embarked upon the competitive selection process prescribed by ordinance. That is, the selection committee conducted public meetings on July 10, August 12, and August 21, 2020, to score each of the ten applicants on the nine criteria in Mount Pleasant Ordinance No. 1046, § 115.03(e)(1). In the end, the selection committee awarded the highest scores to Lume Cannabis Co. (Lume) for two locations and House of Fire Provisioning for one location, so both of those applicants received conditional authorization to operate as recreational marijuana retailers.

Plaintiff Cary finished seventh in the selection committee's scoring, so the City denied its application to operate as a recreational marijuana retailer. In response, Cary began by expressing its displeasure during the public-comment period at a city commission meeting held on August 27, 2020. That prompted the city manager to send Cary a letter explaining that "the City Ordinance does not allow for . . . review or revision" of the selection committee's scoring. Undaunted, Cary requested a meeting with the city commission to discuss the matter, characterized the ordinance as unconstitutional and inconsistent with Michigan law, and threatened litigation. The city manager responded to Cary that "the City is unable to grant the relief you appear to be requesting (awarding a license to your company)." Stymied by the City and its ordinance, Cary turned to the courts.

On December 10, 2020, plaintiff filed a one-count complaint against the City setting forth allegations of due-process violations, undue influence, arbitrary scoring, antitrust violations, and a request for injunctive and declaratory relief. On December 30, 2020, the City filed a motion for summary disposition under MCR 2.116(C)(4) and (8), asserting that the trial court lacked subject-matter jurisdiction and that the complaint failed to state a viable claim. On January 25, 2021, the trial court issued a five-page opinion and order awarding summary disposition to the City pursuant to both cited subsections of MCR 2.116(C). Plaintiff filed a timely motion for reconsideration that the trial court denied in a three-page written opinion issued on March 5, 2021. Plaintiff also filed a proposed amended complaint on February 16, 2021, adding a mélange of new legal theories and a claim for wrongful denial of a request under the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, to the hodgepodge of legal theories in the original complaint. On April 13, 2021, however, the trial court issued a four-page opinion denying leave to amend the complaint. That opinion and order also denied plaintiff's rather strange submission on March 30, 2021, styled as "Plaintiff's Motion in Opposition to Defendant's Motion in Opposition of Plaintiff's Motion for Leave to Amend Complaint," thereby cleaning up the last remnants of the action.

But before the trial court issued its final written opinion on April 13, 2021, plaintiff began filing appeals in this Court. Specifically, in a claim of appeal dated March 26, 2021, plaintiff told

us that it was appealing the trial court's "final judgment and order entered on March 5, 2020." As far as we can discern, that claim of appeal addressed the trial court's opinion and order issued on March 5, *2021*, that denied plaintiff's motion for reconsideration. Next, in a claim of appeal dated May 4, 2021, plaintiff sought review of "a final judgment or order entered on April 13, 2021." It appears that that was an attempt to pursue an appeal as of right from the trial court's opinion and order issued on April 13, 2021, denying plaintiff leave to amend its complaint and denying the odd motion from plaintiff opposing defendant's opposition to the request for leave to amend. But we issued an order dismissing that claim of appeal for lack of jurisdiction because a trial court's post-judgment "order denying a motion for leave to amend a complaint . . . is not a final order appealable of right." See *Cary Investments LLC v City of Mount Pleasant*, unpublished order of the Court of Appeals, entered May 11, 2021 (Docket No. 357072). So plaintiff went back to the drawing board and filed an application for leave to appeal the trial court's opinion and order from April 13, 2021, which we granted. See *Cary Investments LLC v City of Mount Pleasant*, unpublished order of the Court of Appeals, entered November 30, 2021 (Docket No. 357862). Thus, what we have before us are plaintiff's appeals of the trial court's award of summary disposition under MCR 2.116(C)(4) and (8), the subsequent denial of plaintiff's motion for reconsideration, and the denial of leave to file plaintiff's proposed amended complaint. We must address in turn the various issues subsumed in all of those challenges presented by plaintiff.

## II. LEGAL ANALYSIS

What's striking about this case is that there's so much less to it than meets the eye. But we must consider each of plaintiff's arguments about each ruling of the trial court at each stage of the proceedings. First, we must review de novo the trial court's ruling awarding summary disposition to defendant in the written opinion and order issued on January 25, 2021. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Next, we must review for an abuse of discretion the trial court's denial of reconsideration to plaintiff in the written opinion and order issued on March 5, 2021. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). Finally, we must review for an abuse of discretion the trial court's denial of plaintiff's motion to amend its complaint in the written opinion and order issued on April 13, 2021. See *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). "The determination that a trial court abused its discretion involves far more than a difference in judicial opinion." *Id.* "Rather, an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.*

### A. SUMMARY DISPOSITION

The trial court awarded summary disposition to defendant under MCR 2.116(C)(4) and (8) in a written opinion issued on January 25, 2021. Summary disposition is appropriate under MCR 2.116(C)(4) if the trial court "lacks jurisdiction of the subject matter." "In deciding whether to grant a motion for summary disposition pursuant to MCR 2.116(C)(4), a court must consider '[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties . . . .' " *Henry v Laborers' Local 1191*, 495 Mich 260, 273; 848 NW2d 130 (2014). In contrast, because a "motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint[,]" *El-Khalil*, 504 Mich at 159, in "considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 159-160. But if a summary disposition motion

based on MCR 2.116(C)(8) presented the trial court with evidence beyond the pleadings, "we treat the motion as having been brought and decided under MCR 2.116(C)(10) because it necessarily involved considering material outside the pleadings." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018). Summary disposition pursuant to MCR 2.116(C)(10) may be awarded only if "there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160.

Turning first to the award of summary disposition under MCR 2.116(C)(4), we conclude that the trial court erred in deciding that it lacked subject-matter jurisdiction to address plaintiff's claim for relief set forth in its complaint. The trial court determined that "plaintiff's complaint is a disguised appeal that was not filed within 21 days after the Selection Committee's decision, as required by the Michigan Court Rules." Specifically, the trial court recast plaintiff's complaint as an appeal of a municipal body's decision that is "final and subject to appellate review by the circuit court pursuant to Const 1963, art 6, § 28." *Carleton Sportsman's Club v Exeter Twp*, 217 Mich App 195, 200; 550 NW2d 867 (1996). But the complaint frames plaintiff's claim as a matter of due process, not an appeal. To be sure, when due-process claims simply "raise issues relative to the decision" of a local body such as the selection committee "and the procedures employed" by such a committee "in reaching that decision[,]" "they do not establish separate causes of action," so they must be presented as an appeal. *Krohn v City of Saginaw*, 175 Mich App 193, 198; 437 NW2d 260 (1988). But "an administrative body cannot rule on constitutional claims[,]" *Connell v Lima Twp*, 336 Mich App 263, 285; 970 NW2d 354 (2021), so plaintiff's due-process claims that could not be raised before the selection committee may be presented to the circuit court in the first instance. Therefore, to the extent that plaintiff's due-process claims do more than challenge the "procedures employed" by the selection committee and its ultimate decision, we cannot uphold the trial court's award of summary disposition for defendant under MCR 2.116(C)(4).

But we agree with the trial court that the City was entitled to summary disposition on the merits. Plaintiff's complaint set forth a single claim with the heading: "Declaratory Judgment and Injunctive Relief." Although MCR 2.605 allows plaintiff to seek a declaratory judgment and MCR 3.310 permits plaintiff to request injunctive relief, those remedies must be predicated upon a viable legal theory. Count One of the complaint simply asks for "a declaratory judgment that the City of Mt. Pleasant's denial of Plaintiff's [license] application violates Plaintiff's due process rights" and requests that the trial court "[e]njoin the City of Mt. Pleasant from denying Plaintiff to operate as a recreational marijuana retail facility" because of that due-process violation. Plaintiff's theory of due process contains strands of two separate constitutional guarantees—substantive due process and procedural due process. See *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014) (noting that "the Due Process Clause offers two separate types of protections—substantive and procedural"). We shall address each of these two constitutional guarantees in turn.

The guarantee of substantive due process " 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them[.]' " *Mettler Walloon, LLV v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). In substantive-due-process "disputes over municipal actions, the focus is on whether there was egregious or arbitrary governmental conduct." *Id.* "[W]hen evaluating municipal conduct vis-à-vis a substantive due process claim, only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* "To sustain a substantive due process claim against municipal actors, the governmental conduct must be so arbitrary and capricious as to shock the conscience." *Id.* at 198. Refusal to issue a permit is not

the sort of municipal action that constitutes a violation of substantive due process.  See *id.* at 197, quoting *City of Cuyahoga Falls, Ohio v Buckeye Community Hope Foundation*, 538 US 188, 198-199; 123 S Ct 1389; 155 L Ed 2d 349 (2003).  Thus, any effort by plaintiff to rely upon substantive due process is a nonstarter.

The guarantee of procedural due process requires "notice and an opportunity to be heard" prior to a deprivation of life, liberty, or property.  *Bonner*, 495 Mich at 235.  Also, procedural due process contemplates "a decision by an impartial decision-maker[.]"  See *id.* at 238.  But all that is required before deprivation of a property interest "is that the procedures at issue be tailored to 'the capacities and circumstances of those who are to be heard' to ensure that they are given a meaningful opportunity to present their case[.]"  *Id.* at 238-239.  Moreover, no process at all is required if the aggrieved party lacks an enforceable property interest.  See *Mettler Walloon*, 281 Mich App at 209 (" 'A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.' ").  In this case, neither plaintiff's complaint nor the record before the trial court establishes that plaintiff had a property interest in a license or that plaintiff was deprived of procedural due process in any event.

As we have explained, "a first-time applicant" for a license "is not even entitled to minimal due process." *Wong v City of Riverview*, 126 Mich App 589, 592; 337 NW2d 589 (1983).  Unlike the holder of a license seeking renewal, a new applicant for a license has no property interest in any license to support a claim for deprivation of procedural due process.  See *id.* at 592-593.  We have noted that, "even though the first-time applicant has no right to procedural due process, this Court will review the city's decisions" with respect to issuance of a license.  *Id.* at 593.  But "this review is extremely narrow." *Id.*  "It is limited only to whether or not the city has acted arbitrarily and capriciously." *Id.*  Nothing in the complaint or the record before the trial court even suggests that the City acted in an arbitrary and capricious manner when it solicited applications for licenses, prescribed and applied a scoring system, conducted public meetings to consider the applications, and ultimately awarded licenses to the applicants with the three highest aggregate scores.

Even if plaintiff had a property interest sufficient to trigger the protections of due process in its endeavor to obtain a license, neither the complaint nor the record before the trial court hints at conduct by the City amounting to a deprivation of due process.  In developing and implementing its selection process, the City followed the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.27101 *et seq.*, which spells out the process for municipalities that wish to issue licenses to medical-marijuana facilities.[1]  In an ordinance, the City prescribed a detailed scoring system for

_____

[1] Michigan voters liberalized marijuana laws in two stages.  Voters approved medical marijuana in 2008 through the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.  People v Kolanek*, 491 Mich 382, 393-394; 817 NW2d 528 (2012).  That prompted our Legislature to enact the MMFLA in 2016 for licensing and regulating medical-marijuana facilities.  The licensing provisions in the MMFLA instructed municipalities in issuing licenses to applicants who wished to participate in the medical-marijuana business.  Then, in 2018, voters approved the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, which generally decriminalized recreational possession and use of marijuana for people 21 years old or older and provided for the legal production and sale of marijuana.  *Brightmoore Gardens, LLC v Marijuana*

applicants and assigned a selection committee, which applied the scoring system at meetings held in public on three separate days. Following the MMFLA, the City afforded each license applicant an extraordinary amount of process before determining the applicants with the three highest scores. Plaintiff finished seventh in the selection committee's scoring, but that result does not mean that plaintiff suffered a due-process violation. After all, the guarantee of procedural due process merely ensures a fair procedure, not any particular outcome, and the guarantee of substantive due process just serves as a safeguard against "governmental conduct" that is "so arbitrary and capricious as to shock the conscience." See *Mettler Walloon*, 281 Mich App at 198. Plaintiff neither pleaded nor established anything of that sort, so the City was entitled to summary disposition on the pleadings under MCR 2.116(C)(8) and, because plaintiff presented materials beyond the pleadings, the City was entitled to summary disposition under MCR 2.116(C)(10) as well.

Plaintiff contends that it suffered a due-process violation because it already had a license to operate a medical-marijuana provisioning center, so the City should have highly valued plaintiff when the City chose the recipients of three recreational-marijuana retailer licenses. But the City's decision to authorize plaintiff to operate a medical-marijuana facility did not obligate the City to subsequently approve plaintiff for a license to operate as a marijuana retailer for purchasers who wish to obtain marijuana for recreational purposes.[2] Plaintiff further contends that it was a victim of undue influence because Lume—a competing applicant that received two of the top three scores—threatened the City with litigation, thereby unduly influencing the City's selection process.[3] How that assertion relates to plaintiff's due-process claim is a mystery that we must try to solve despite a lack of guidance from plaintiff. At the second public meeting held on August 12, 2020, members of the selection committee took umbrage in response to Lume's letter. See Verified Complaint, ¶¶ 35-37. Thus, to the extent Lume used a threat of litigation to cow the selection committee, the public record indicates that its letter had precisely the opposite effect. Accordingly, although procedural due process requires "a decision by an impartial decision-maker," see *Bonner*, 495 Mich at 238, neither plaintiff's complaint nor the evidence submitted to

---

*Regulatory Agency*, 337 Mich App 149, 153; 975 NW2d 52 (2021), lv den 508 Mich 983; 966 NW2d 154 (2021). After the MRTMA became law, municipalities turned to the MMFLA for guidance on issuing licenses to operate as marijuana retailers for customers eligible to purchase marijuana for recreational purposes under the MRTMA.

[2] Such a vendor is ordinarily described as an "adult-use retailer." Michigan law defines the concept as follows: " 'Marihuana retailer' means a person licensed to obtain marihuana from marihuana establishments and to sell or otherwise transfer marihuana to marihuana establishments and to individuals who are 21 years of age or older." MCL 333.27053(n).

[3] Plaintiff's reliance upon the concept of undue influence to challenge actions of a municipal body seems both unprecedented and misplaced. Undue influence is regarded as an "equitable matter," see *Adams v Adams*, 276 Mich App 704, 714 n 5; 742 NW2d 399 (2007), which may be invoked for the purpose of setting aside a conveyance or instrument such as a will, a trust, or a deed. See, e.g., *In re Karmey Estate*, 468 Mich 68, 69; 658 NW2d 796 (2003) (will); MCL 700.7406 (trust). This challenge to a licensing decision by a municipal body involves nothing even remotely like that.

the trial court offers any indication that the selection committee was something less than an impartial decision-maker.[4]  Finally, plaintiff's allegations of arbitrary scoring by the selection committee ring hollow and do nothing to support a due-process claim.  The right to due process guaranteed by the United States Constitution and the Michigan Constitution of 1963 does not empower courts to micromanage the decision-making of governmental entities.  See *Krohn*, 175 Mich App at 198.  Asking this Court to second-guess the selection committee's scoring of the numerous applicants competing for three licenses fundamentally misapprehends our role in enforcing the constitutional right to due process.  Accordingly, because we conclude that the trial court acted correctly in granting the City summary disposition under MCR 2.116(C)(8) based upon the pleadings and that the materials beyond the pleadings justified an award of summary disposition under MCR 2.116(C)(10), we shall affirm the trial court's decision to grant summary disposition to the City.

## B.  MOTION FOR RECONSIDERATION

After the trial court awarded summary disposition to the City, plaintiff filed a motion for reconsideration that the trial court denied on March 5, 2021.  Plaintiff's motion for reconsideration was nothing more than a regurgitation of the arguments plaintiff made in opposition to the City's motion for summary disposition.  Unsurprisingly, the trial court recognized the motion for what it was and denied it as a mere rerun of the initial contest over summary disposition.  Plaintiff notes correctly that motions for reconsideration under MCR 2.119(F) afford trial courts the opportunity "to revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court."  *Hill v City of Warren*, 276 Mich App 299, 307; 740 NW2d 706 (2007).  But the trial court in this case already declined plaintiff's invitation to exercise discretion in such a manner.  Given our conclusion that the trial court properly granted summary disposition to the City, we certainly cannot say that the trial court's refusal to change its decision in response to plaintiff's motion for reconsideration was an abuse of discretion.  See *Woods*, 277 Mich App at 629-630.

## C.  MOTION TO AMEND

After losing on summary disposition, plaintiff filed a motion to amend and presented the trial court with a proposed amended complaint.  But before the trial court addressed that motion, plaintiff filed its first claim of appeal dated March 26, 2021.  More than two weeks later, the trial court issued an opinion denying plaintiff leave to amend its complaint.  "In general, once a claim of appeal is filed with this Court, the trial court may not amend the judgment appealed from except pursuant to an order of this Court, by stipulation of the parties, or as otherwise provided by law." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 542; 730 NW2d 481

---

[4] Recently, our Supreme Court reaffirmed the reasoning of *In re Williams' Estate*, 185 Mich 97, 118; 151 NW 731 (1985), that the assertion of undue influence requires a showing that the victim " 'act[ed] under such coercion, compulsion, or constraint that his own free agency is destroyed.' " See *In re Mardigian Estate*, 502 Mich 154, 182; 917 NW2d 325 (2018) (opinion of McCORMACK, J.); see also *id.* at 160 (opinion of MARKMAN, C.J.).  Nothing in plaintiff's complaint or any of the evidence presented to the trial court comes anywhere near that stringent standard.

(2007), amended in part on other grounds, 480 Mich 910; 739 NW2d 622 (2007), citing MCR 7.208(A). "Indeed, the filing of a claim of appeal typically divests the circuit court of its jurisdiction to amend its final orders and judgements." *Ypsilanti Fire Marshal*, 273 Mich App at 542. Because plaintiff's motion requested permission to file an amended complaint after the trial court had dismissed the original complaint, the motion asked the circuit court to alter the order plaintiff had already appealed. Thus, the trial court lacked jurisdiction to address plaintiff's motion to amend its complaint during the pendency of this appeal. Therefore, on appeal, we cannot review the propriety of the trial court's denial of plaintiff's motion to amend its complaint.[5]

In Docket No. 356707, we affirm the circuit court's award of summary disposition in favor of defendant under MCR 2.116(C)(8) and (10). In Docket No. 357862, we conclude that the trial court lacked jurisdiction to decide plaintiff's motion to amend its complaint.

/s/ Christopher P. Yates
/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola

---

[5] Even if we could now consider plaintiff's challenge to the trial court's denial of leave to amend, we would struggle to come up with any good reason to authorize an amendment of the complaint. We question whether plaintiff could be entitled to meaningful relief because it finished seventh in the competition for three licenses to operate as a recreational-marijuana dealer. Consequently, that poor showing appears to divest plaintiff of standing to contest the City's award of the three licenses to other applicants because plaintiff would not be next in line even if all three of the licenses could not be used by the winning applicants, such as Lume. See *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) ("the standing inquiry focuses on whether a litigant 'is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable' ").