*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JAMES M. KURTZ PROTECTION TRUST

---

STEVEN J. KURTZ, Trustee,

　　　　　Appellant,

v

DEBRA ARNOLD, DAVID ANDERSON, and
TODD ANDERSON,

　　　　　Appellees.

UNPUBLISHED
March 23, 2023

No. 360605
Kent Probate Court
LC No. 21-209408-TV

---

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this trust dispute, appellant, Steven J. Kurtz, filed a motion seeking summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) in the trial court. However, the court ultimately granted summary disposition in favor of appellees, Debra Arnold, David Anderson, and Todd Anderson pursuant to MCR 2.116(I)(2) (nonmoving party entitled to summary disposition). Appellant appeals by delayed leave granted.[1] We affirm in part, reverse in part, and remand for additional proceedings.

## I. BACKGROUND

This case arises from a trust agreement entered into by married couple James and Barbara Kurtz in February 1995, called "the James M. Kurtz Trust" (hereinafter: JMK Trust). James and Barbara Kurtz had children from prior marriages, and this trust was designed to provide their children with equal shares of the remaining trust assets upon the deaths of the grantors. A provision

---

[1] *In re James M Kurtz Protection Trust*, unpublished order of the Court of Appeals, entered August 4, 2022 (Docket No. 360605).

in the trust agreement barred one grantor from amending or revoking the dispository portions of the trust agreement following the death of the other grantor. However, a separate provision provided that the trustee would hold the remaining trust assets "for the use and benefit of the surviving grantor" and that the trustee must pay as much of the trust's assets "to the surviving grantor as the surviving grantor may request." James and Barbara Kurtz appointed themselves to serve as co-trustees.

After Barbara Kurtz died in August 2010, James Kurtz promptly began making changes to their estate plan. Six weeks after her death, he established a new trust, called "the James M. Kurtz Protection Trust," naming all five of his and Barbara Kurtz's children as beneficiaries. But under the new trust, James Kurtz's two children received substantially larger shares of the remainder. James Kurtz later amended the Protection Trust so that the sole remainderman would be his son, but daughter and stepchildren were removed. Simultaneously, James Kurtz also restated the JMK trust. Despite describing the new agreement as merely a "restatement," this 2010 version of the trust had significant differences. In particular, the sole beneficiary of the remainder upon James Kurtz's death was the Protection Trust. In essence, he replaced the 1995 Trust with the Protection Trust, the sole beneficiary of which was Steven. Additionally, he removed a property he owned in Rockford from the JMK trust and placed it in the Protection Trust. James Kurtz subsequently sold the Rockford property for $410,000. James Kurtz also purchased a hunting property in Cedar Springs on behalf of the JMK trust.

When James Kurtz died in September 2020, appellant became successor trustee of both trusts. The following June 2021, appellees, Barbara Kurtz's children, brought a petition to set aside the trusts. Appellant moved for summary disposition, but the court ultimately granted summary disposition in favor of appellees. The court declared that the restated JMK Trust and the Protection Trust were void, finding that James Kurtz's actions following Barbara Kurtz's death were for the specific purpose of disinheriting her children. The court ruled that this violated both, the express terms of the 1995 trust, and Barbara Kurtz's intent upon entering the 1995 trust. The court ordered that discovery remain open, so appellees could trace any assets that had been wrongfully removed from the original trust.

## II. DISCUSSION

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted under MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. Summary disposition should be granted under MCR 2.116(I)(2) when "it appears to the court that the opposing party, rather than the moving party, is entitled to judgment . . . " This Court also reviews "de novo the proper interpretation of trusts and wills, as well as the interpretation of statutes." *In re Mardigian Estate*, 312 Mich App 553, 558; 879 NW2d 313 (2015).

## B. OVERVIEW OF GOVERNING LAW

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "This intent is gauged from the trust document itself, unless there is ambiguity. If ambiguity exists, the court must look outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction." *Id.* (citation omitted). The interpretation of trust documents is governed by the same rules applicable to the interpretation of wills. *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005). Resolution of this appeal will require examination of certain provisions of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*.

> This Court's primary goal in construing a statute is to determine and give effect to the intent of the Legislature, turning first to the statutory language to ascertain that intent. In construing a statute, we interpret defined terms in accordance with their statutory definitions and undefined terms in accordance with their ordinary and generally accepted meanings. When statutory language is unambiguous, judicial construction is not required or permitted because the Legislature is presumed to have intended the meaning it plainly expressed. [*People v Campbell*, 329 Mich App 185, 193-194; 942 NW2d 51 (2019) (quotation marks and citations omitted; alteration removed).]

Section 7603 provides, in relevant part:

> (1) . . . [W]hile a trust is revocable, rights of the trust beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor.

> \* \* \*

> (3) While a trust is not revocable and while a person has a currently exercisable power of withdrawal over the entire principal of the trust, the duties of a trustee are owed exclusively to the person.

> \* \* \*

Section 700.7901 defines "breach of trust" and spells out potential remedies:

> (1) A violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust.

> (2) To remedy a breach of trust that has occurred or may occur, the court may do any of the following:

> (a) Compel the trustee to perform the trustee's duties.

> (b) Enjoin the trustee from committing a breach of trust.

(c) Compel the trustee to redress a breach of trust by paying money, restoring property, or other means.

(d) Order a trustee to account.

(e) Appoint a special fiduciary to take possession of the trust property and administer the trust.

(f) Suspend the trustee.

(g) Remove the trustee as provided in section 7706.

(h) Reduce or deny compensation to the trustee.

(i) Subject to section 7912,[2] void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds.

(j) Order any other appropriate relief. [MCL 700.7901.]

## C. STANDING

Appellant's argument that appellees lacked standing to challenge the validity of the protection trust is without merit.

The standing doctrine's purpose "is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy. Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citations omitted). In Michigan, one has standing if "one has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Bowie v Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992) (quotation marks and citation omitted). In the present case, appellees had a real interest in the property being distributed by the restated JMK Trust and by the Protection Trust. These trusts were distributing property that was originally placed in the 1995 JMK Trust, and under the terms of that trust, appellees would have been recipients of shares of the property. Because appellees alleged that the protection trust and restated JMK trust were distributing property to which they were actually entitled, appellees had standing to petition the court to set aside the trusts.

## D. VALIDITY OF 2010 RESTATEMENT OF JMK TRUST

---

[2] Section 7912 provides protection to third parties from liability stemming from good faith dealings with the trustee when the third parties were unaware of the trustee's breach of trust. MCL 700.7912.

Appellant's argument that the trial court erred by nullifying the 2010 restatement of the JMK Trust is without merit because the 1995 JMK Trust became largely irrevocable after Barbara Kurtz's death.

Paragraph three of the 1995 JMK Trust states, "A surviving grantor may not revoke or amend the dispository portions of this trust after the death of the other grantor . . . " Because Barbara Kurtz died prior to the restatement of the JMK Trust, James was barred from revoking the dispository portions of the 1995 trust. The restated trust, however, explicitly stated that it "amends and replaces in its entirety the" 1995 JMK Trust. Because the dispository portions of the 1995 trust became irrevocable upon Barbara Kurtz's death and because the restatement purported to entirely replace the 1995 trust, the trial court properly concluded that this restatement was void.[3]

### E. INTER VIVOS TRANSFERS TO PROTECTION TRUST

James Kurtz violated the terms of the 1995 JMK Trust by removing its assets and placing them in the Protection Trust. We do agree, however, with appellant's argument that the trial court erred by declaring the Protection Trust entirely void.

In 2010 and 2011, through the use of six quit claim deeds, James Kurtz removed the Rockford property from the JMK trust, gave it to himself in his individual capacity, and then transferred ownership of it to the protection trust. Because the 2010 restatement was void, the issue before us is whether these transactions violated the terms of the 1995 trust agreement. Resolution of this issue requires an analysis of three sections of the JMK Trust:

> 3. **Revocation and Amendment.** Either grantor may amend part or all of this agreement or revoke it at any time by written notice delivered to the other grantor and to the trustees, except that trustee's responsibilities may not be changed without its written consent . . . A surviving grantor may not revoke or amend the dispository portions of this trust after the death of the other grantor or while the other grantor is unable to handle business matters . . .

> \* \* \*

> 5. **Grantor's Life.** So long as either grantor lives, trustee shall pay to or for the benefit of the living grantors so much of the net income minus trustee's fees and expenses and so much of the principal as either grantor requests. If either grantor should become unable to handle business matters, trustee may in its discretion pay to or for the benefit of said grantor whatever amounts of net income and principal are needed for grantor's care, support, comfort, welfare, or pleasure, for protection of grantor's property, for the payment of grantor's taxes or for any other purposes which trustee determines to be in grantor's best interest without

---

[3] We also note that the restatement removed the remaindermen from the original JMK trust and instead named the Protection trust as the sole remainderman, and the identities of the trust's remaindermen clearly constituted a dispository portion which could not be amended.

regard to any other assets or resources which grantor may have and without regard to the interests of remaindermen . . .

\*   \*   \*

**8. Distribution on Grantor's Death.** Upon the death of the first of the grantors to die, the trustee shall hold all trust assets in trust for the use and benefit of the surviving grantor. The trustee shall pay so much of the net income and principal to the surviving grantor as the surviving grantor may request.

Paragraph three bars amendments of the trust's dispository provisions, but paragraph eight arguably suggests that, as a trustee as well as a grantor, James Kurtz had the right to remove all of the property from the JMK Trust and pay it to himself. However, the "sole objective" of trust interpretation is to ascertain the intent of the settlor, and it appears undisputed that one of the primary the intents of paragraph three (and the Trust document when considered as a whole) was to ensure the children of one settlor would not be posthumously disinherited following the death of that settlor. *Kostin*, 278 Mich App at 53. If the tension between paragraphs three and eight were resolved in such a way that would enable the surviving grantor to remove all trust assets and then place them in a different trust for which one child of the surviving grantor is the sole remainderman, the intent of the deceased grantor would be frustrated and the relevant portion of paragraph three essentially nullified.

When the JMK Trust document is examined as a whole, rather than looking at paragraphs three and eight in isolation, it is clear that the settlors intended that the surviving grantor would be limited to using the trust assets for his or her "benefit" and could not disinherit the remaindermen named in the trust. The differences between paragraphs five and eight make it clear that the grantors intended that the breadth of the surviving grantor's rights to the trust assets would change upon the death of the other grantor. Paragraph five provides: "So long as either grantor lives, trustee shall pay to or for the benefit of the living grantors so much of the net income less reasonable trustee's fees and expenses and so much of the principal as either grantor requests." Paragraph eight provides:

Upon the death of the first of the grantors to die, the trustee shall hold all trust assets in trust for the use and benefit of the surviving grantor. The trustee shall pay so much of the net income and principal to the surviving grantor as the surviving grantor may request.

Under appellant's interpretation, these provisions of paragraphs five and eight would have the same meaning: the trustee must pay the grantor as much as the grantor wants and for whatever reason. However, if these provisions were intended to have the same meaning, they would presumably have been written with the same language. Indeed, we can discern no reason why the trust agreement would have different sections governing a grantor's rights before and after the death of the other grantor if the intent was for the rules to remain the same. Clearly, the intent was for the rights of the surviving grantor to be in some ways restricted following the death of the other grantor. Furthermore, it should be noted that paragraph eight instructs the trustee to hold the assets of the trust "*for the use and benefit* of the surviving grantor." There is no comparable qualification in paragraph five; rather, in paragraph five the trustee was instructed to "pay *to or for the benefit*

*of* the living grantors." These differences suggest that the intent of the 1995 agreement was, while both grantors lived, the assets could be removed for any reason, but when only one grantor lived, the assets could be removed only for the surviving grantor's use and benefit. It is undisputed that the assets were not moved from the JMK Trust and to the Protection Trust for the use and benefit of James Kurtz; in his affidavit, Steven Kurtz expressly states that his father's actions were specifically designed to disinherit his daughter and stepchildren.

However, we agree that the trial court went a step too far by wholly nullifying the protection trust. In its March 1, 2022 order, the trial court did not simply void any transfers to the protection trust of property that was taken from the JMK Trust; it declared that "all trusts created by James M. Kurtz after the James M. Kurtz Trust dated February 22, 1995 are void." Appellant is correct that there was nothing in the 1995 JMK Trust specifically restricting James Kurtz's ability to create subsequent trusts. The trial court could and should have nullified any wrongful transfers of assets traceable to the JMK Trust without declaring the trust entirely void.

## F. BREACH OF TRUST

Appellant argues that James Kurtz could not commit a breach of trust because he only owed fiduciary duties to himself. We disagree.

A breach of trust occurs when a trustee violates a duty owed to a beneficiary. MCL 700.7901(1). Appellant argues that James Kurtz could not have breached the trust because he did not owe duties to anybody other than himself. Appellant cites MCL 700.7603(3), which provides that when there is an irrevocable trust and there is a person who "has a currently exercisable power of withdrawal over the entire principal of the trust," the trustee only owes a duty to the person who retains that power. Appellant argues that because James Kurtz, under paragraph eight of the JMK Trust, had the power to withdraw all assets of the trust, he was the only person to whom any duties were owed. However, as is discussed above, James Kurtz's right to withdraw the entire principal of the trust was restricted to withdrawals for his own use and benefit.

The question then becomes whether James Kurtz had "a currently exercisable power of withdrawal over the entire principal of the trust" in light of this restriction. MCL 700.7603(3).

> "Power of withdrawal" means a presently exercisable general power of appointment other than a power that is either of the following:
>
> (*i*) Exercisable by a trustee and limited by an ascertainable standard.
>
> (*ii*) Exercisable by another person only on consent of the trustee or a person holding an adverse interest. [MCL 700.7103(f).]

James Kurtz had a general power of appointment because there were no provisions in the creating instrument restricting James's ability to both retain the power of appointment and be an appointee. See MCL 556.112(h), (i). However, this general power of appointment was limited by an ascertainable standard because after Barbara Kurtz's death property could only be withdrawn for the surviving grantor's use and benefit. Therefore, James Kurtz did not have an exercisable power of withdrawal over the entirety of the trust's property, and appellant's argument is without merit.

## III. CONCLUSION

We reverse the trial court to the extent that it concluded the Protection Trust was void. The trial court is affirmed in all other respects. The case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.[4]

/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[4] Appellant argues that he cannot be subjected to liability because, assuming there was a breach, it was his father who breached the terms of the trust. However, as of now, the trial court has not imposed any liability on Steven. It is well settled that this Court will not consider hypothetical issues on appeal, reach the merits of issues that are not ripe for review, or issue advisory opinions. See *People v Hart,* 129 Mich App 669, 674, 341 N.W.2d 864 (1983); *Rozankovich v Kalamazoo Spring Corp. (On Rehearing),* 44 Mich App 426, 428, 205 N.W.2d 311 (1973). Because the issue of Steven's liability is purely hypothetical, and we decline to address it.